Paul ROBI, Plaintiff–Appellee,

v.

FIVE PLATTERS, INC.,
Defendant–Appellant.

FIVE PLATTERS, INC.,
Plaintiff–Appellant,

v.

Paul ROBI, Americana Hotel Corp.,
Gino Tonetti and Howard Wolfe,
Defendants–Appellees.

Tony WILLIAMS, Plaintiff–Appellee,

v.

The FIVE PLATTERS, INC.,
Defendant–Appellant.

Nos. 85–6061, 85–6062, 87–5514.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 8, 1987.

Decided Jan. 27, 1988.

Cheri S. O'Laverty, Law Offices of Cheri S. O'Laverty, Los Angeles, Cal., for defendant-appellant.

Allen Hyman, Law Offices of Sam Perlmutter, Los Angeles, Cal., for plaintiff-appellee Robi.

Richard E. Bennett, New York City, for plaintiff-appellee Williams.

Before HALL, NOONAN and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

These consolidated appeals present competing claims to the name THE PLATTERS based upon prior conflicting judgments which the parties, selectively, assert as *res judicata*. Appellant The Five Platters, Inc. (the "Corporation") contends that the district court should have given preclusive effect to a 1975 decision by the Court of Customs and Patent Appeals and to a 1982 New York judgment. The Corporation claims these judgments establish its exclusive right to the name THE PLATTERS for use in connection with a musical entertainment service.

Appellees Paul Robi and Tony Williams are two of the original musical entertainers who were known as THE PLATTERS. Appellee Robi contends the district court was correct when it decided to give preclusive effect, not to the judgments relied upon by the Corporation, but to a 1974 California Superior Court judgment in Robi's favor and against the Corporation. Appellee Williams presents this same argument. As to Williams, however, there is the added circumstance that the district court decided his case a few months after it decided the Robi cases. Thus, at the time Williams' case was decided there was yet another judgment to consider—the district court's own judgment in the recently decided Robi cases.

We affirm in the two Robi cases (No. 85–6061 and No. 85–6062), and reverse in the Williams case (No. 87–5514).

I

FACTS AND PROCEEDINGS

In 1953, a singing group named The Platters was formed and struggled to gain recognition. By 1954, the group consisted of five performers we refer to as the "original" Platters. These performers appeared together on television and in concert from 1954 to 1960. They sold twelve "gold records," that is, records which sold over one million copies.

In January 1956, when the group began to achieve worldwide popularity, its manager and musical director, Buck Ram, suggested that a corporation be formed. He selected an attorney for this purpose, and the Corporation was incorporated under the name "The Five Platters, Inc." The original Platters, who included appellees Robi and Williams, executed employment contracts with the Corporation. They assigned to the Corporation their rights in the name THE PLATTERS in exchange for the issuance to them of shares of stock in the Corporation. Later, in the 1960s, all of the original Platters sold their shares of stock to Buck Ram or to a corporation he controlled.

By 1972, appellee Robi had left the original group, and was performing with other artists. That year, the Corporation sued Robi in a state court action in California. It sought to prevent him from presenting his group as THE PLATTERS. The Corporation claimed it owned the exclusive right to the name THE PLATTERS based upon the assignments it had received from Robi and the other original Platters. The California Superior Court (the "California Court") granted judgment in 1974 in favor of Robi. The California Court determined that the Corporation "was a sham used by Mr. Ram to obtain ownership of the name 'Platters'"; that Ram benefited from an unequal bargaining position between the parties and was guilty of laches and unclean hands; and that the Corporation's issuance of stock to the original Platters was "illegal and void" because the stock was issued in violation of California's corporate securities law. The Corporation appealed, but later dismissed the appeal.

While the California action was pending, and before that court entered its judgment, appellee Tony Williams also became involved in litigation with the Corporation. He petitioned the Trademark Trial and Appeal Board to cancel the Corporation's registration of the service mark, THE PLATTERS. The Board rejected Williams' petition when he failed to respond to the Cor-

poration's motion for summary judgment. He moved to vacate that decision on the ground that he had failed to respond due to "inadvertence, accident or mistake." The Board denied Williams' motion, and its denial was upheld on appeal. *See Williams v. Five Platters, Inc.*, 181 U.S.P.Q. (BNA) 409, 409–10 (Feb. 26, 1974), *aff'd*, 510 F.2d 963 (C.C.P.A.1975).

Several years later, the Corporation filed an action against Williams in the Supreme Court of the State of New York for New York County (the "New York Court"). The New York Court determined that Williams had breached a 1967 contract, pursuant to which he had sold all of his stock in the Corporation and had received approximately $15,000. In this contract, Williams had covenanted to refrain from using the name THE PLATTERS. The contract also contained the following provision:

> Having previously by employment contract dated July 5, 1956 acknowledged that the name "The Platters" is owned exclusively by the corporation Five Platters, Inc., it is hereby expressly acknowledged again by WILLIAMS that the name "The Platters" is now owned exclusively by a corporation known as The Five Platters, Inc.

The New York Court permanently enjoined Williams from using the name THE PLATTERS except to refer to his previous membership in the group. The court also concluded that Williams was "barred by res judicata from challenging [the Corporation's] Federal registration of THE PLATTERS mark ... by reason of" the decision of the Court of Customs and Patent Appeals in *Williams v. Five Platters, Inc.*, 510 F.2d 963 (C.C.P.A.1975).[1]

These three judgments, the 1974 California Court judgment in which Robi prevailed against the Corporation; the 1975 decision by the Court of Customs and Patent Appeals in favor of the Corporation and against·Williams; and the 1982 New York judgment in which the Corporation prevailed against Williams, were three of the judgments for which varying effects of *res judicata* were argued by the parties in the district court.

## II

## APPLICABLE LEGAL PRINCIPLES

### A. *Standard of Review*

 We review de novo a district court's ruling on the availability of *res judicata* both as to claim preclusion and as to issue preclusion. *Blasi v. Williams*, 775 F.2d 1017, 1018 (9th Cir.1985) (claim preclusion); *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1519 (9th Cir.1985) (issue preclusion). The preclusive effect of a judgment in a prior case presents a mixed question of law and fact in which the legal issues predominate. *Blasi*, 775 F.2d at 1018. As to issue preclusion, "[o]nce we determine that [it] is available, the actual decision to apply it is left to the district court's discretion." *Davis & Cox*, 751 F.2d at 1519.

### B. *Res Judicata*

 Generally, the preclusive effect of a former adjudication is referred to as *"res judicata."* The doctrine of *res judicata* includes two distinct types of preclusion, claim preclusion and issue preclusion.[2] Claim preclusion "treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same 'claim' or 'cause of action.'" *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir.1978); *see also McClain v. Apodaca*, 793 F.2d 1031,

---

1. The Corporation also has litigated its claim to the exclusive rights to THE PLATTERS against other members of the original group, *see The Five Platters, Inc. v. Taylor*, No. C–5249 (D.Colo., Feb. 1, 1974), and against other entities which were not connected with the original Platters. *See The Five Platters, Inc. v. Purdie*, 419 F.Supp. 372, 377 (D.Md.1976) ("Since 1967, plaintiff has been in a constant battle to stem the tide of proliferating imitators [of The Platters].").

2. We prefer to use these terms rather than "merger," "bar," and "collateral estoppel." *See Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d 1524, 1529 (9th Cir.1985). The Supreme Court has encouraged the use of claim preclusion and issue preclusion rather than *res judicata* (as merger or bar) and collateral estoppel, respectively. *See Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984).

1033 (9th Cir.1986). Claim preclusion "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979), *quoted in Americana Fabrics, Inc. v. L & L Textiles, Inc.,* 754 F.2d 1524, 1529 (9th Cir.1985).

■ The doctrine of issue preclusion prevents relitigation of all "issues of fact or law that were actually litigated and necessarily decided" in a prior proceeding. *Segal v. American Tel. & Tel. Co.,* 606 F.2d 842, 845 (9th Cir.1979), *quoted in Americana,* 754 F.2d at 1529. "In both the offensive and defensive use situations the party against whom estoppel [issue preclusion] is asserted has litigated and lost in an earlier action." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979). The issue must have been "actually decided" after a "full and fair opportunity" for litigation. 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure: Jurisdiction* § 4416, at 138 (1981) [hereinafter 18 Wright].

■ Under the Full Faith and Credit Act, federal courts must give state judicial proceedings "the same full faith and credit ... as they have by law or usage in the courts of [the] State ... from which they are taken." 28 U.S.C. § 1738; *see Parsons Steel, Inc. v. First Alabama Bank,* 474 U.S. 518, 519, 106 S.Ct. 768, 770, 88 L.Ed.2d 877 (1986). This Act requires federal courts to apply the *res judicata* rules of a particular state to judgments issued by courts of that state. *Id.* at 523, 106 S.Ct. at 771. Accordingly, we apply California law of *res judicata* to the California judgment, New York law to the New York judgment, and federal law to the federal judgments.

## C. *Inconsistent Judgments*

■ Courts are not required to apply *res judicata sua sponte.* Thus, if a second court to face a claim or issue is not presented with *res judicata* arguments, or rejects these arguments, an inconsistent judgment may arise. If two or more courts render inconsistent judgments on the same claim or issue, a subsequent court is normally bound to follow the most recent determination that satisfies the requirements of *res judicata. See Americana,* 754 F.2d at 1529–30; *see also Treinies v. Sunshine Mining Co.,* 308 U.S. 66, 75–78, 60 S.Ct. 44, 49–51, 84 L.Ed. 85 (1939); *Porter v. Wilson,* 419 F.2d 254, 259 (9th Cir.1969), *cert. denied,* 397 U.S. 1020, 90 S.Ct. 1260, 25 L.Ed.2d 531 (1970). Restatement (Second) of Judgments § 15 (1982).[3] This is referred to as the "last in time" rule. *Americana,* 754 F.2d at 1526.

In *Americana* we applied the last in time rule to resolve conflicting judgments rendered by a California Superior Court and a United States District Court for the Southern District of New York ("SDNY"). A contract dispute arose between Americana Fabrics and L & L Textiles. Americana sought to compel arbitration as provided by the contract. The California Court issued an order staying arbitration. Approximately one month later, the SDNY found the contract's arbitration clause enforceable and ordered arbitration. *Id.* at 1527. A federal district court in California was then asked to enforce the SDNY judgment. It refused to do so. We reversed, holding that the SDNY judgment—right or wrong —was binding because it was the last in time. *Id.* at 1530.

When two inconsistent judgments exist, it is tempting for a court to reexamine the merits of the litigants' dispute and choose the result it likes best. There are important reasons to avoid this temptation. First, if one party could have raised *res*

---

**3.** The Restatement suggests that a court might justifiably part with the last in time doctrine when the second of two conflicting judgments results from an error in the application of "full faith and credit to the judgment of a sister state and the losing party was denied review in the Supreme Court of the United States." Restatement (Second) of Judgments § 15 comment e (1982) (citing Restatement (Second) Conflict of Laws § 114 comment b (1971)). This issue is not presented by these consolidated appeals.

*judicata,* but did not, that litigant must bear the cost of its tactic or inadvertence. *See* 18 Wright § 4404 at 26–27. Second, the most recent court to decide the matter may have considered and rejected the operation of the prior judgment as *res judicata,* and *its* decision should be treated as *res judicata* on the preclusive effect of the prior judgment. *See Americana,* 754 F.2d at 1530. Finally, the last in time rule is supported by the rationale that it " 'end[s] the chain of relitigation ... by stopping it where it [stands]' after entry of the [most recent] court's judgment, and thereby discourages relitigation in [yet another] court." *Id.* (quoting *Porter v. Wilson,* 419 F.2d 254, 259 (9th Cir.1969), *cert. denied,* 397 U.S. 1020, 90 S.Ct. 1260, 25 L.Ed.2d 531 (1970)). Therefore, even when we think that the most recent judgment might be wrong, we still give it *res judicata* effect so that finality is achieved and the parties are encouraged to appeal an inconsistent judgment directly rather than attack it collaterally before another court. *See id.*

## III

## THE ROBI CASES

██ In the two Robi cases now before us, the district court granted Robi's motion for preliminary injunction (No. 85–6061), and dismissed the Corporation's complaint against Robi for alleged trademark infringement and unfair competition (No. 85–6062). In both of these cases, the district court gave claim preclusive *res judicata* effect to the 1974 California Superior Court judgment.

### A. *The California Judgment*

In its suit against Robi in California, the Corporation described the essence of its complaint in its trial brief: "Plaintiff seeks to establish, once and for all, that the only entity entitled to use the name 'The Platters' is plaintiff itself." The Corporation argued that the employment contracts it had negotiated with Robi and the other original Platters transferred to it whatever personal rights those performers might have had in the name THE PLATTERS. The Corporation entered into evidence its federal service mark registration of THE PLATTERS and it advanced legal theories of trademark ownership to support its claim to the name. After a full trial on the merits, the California Superior Court denied the Corporation any injunctive relief or damages. Judgment in favor of Robi was entered.

### B. *The Present Robi Cases*

In the first Robi case in these consolidated appeals, No. 85–6061, Robi sued the Corporation. He asked the district court to declare the rights of the parties to the name, THE PLATTERS, and to enjoin the Corporation from interfering with his use of that name. The district court granted Robi's application for a preliminary injunction against the Corporation. The district found that Robi was likely to succeed on the merits of his case "due to the collateral estoppel effect of the 1974 Superior Court judgment." *Robi v. The Five Platters, Inc.,* No. CV–84–3326–CBM (C.D. Cal. May 22, 1985). Robi also established the possibility of irreparable injury if injunctive relief were denied. *Id.*

In the other Robi case, No. 85–6062, the Corporation sued Robi and others for trademark infringement and unfair competition. The district court granted Robi's motion to dismiss the Corporation's complaint. The district court referred to principles of *res judicata* (in the sense of claim preclusion) and collateral estoppel, again based on the 1974 California Court judgment. It decided that these principles precluded the Corporation from relitigating its claim that, as against Robi, it had the exclusive right to use the name THE PLATTERS.

### C. *The Res Judicata Effect of the 1974 California Judgment in the Robi Cases*

We look to California law to determine the *res judicata* effect of a California judgment. Because the doctrine of claim preclusion disposes of the two Robi cases on appeal, we do not consider the possible application of issue preclusion to his cases.

We also reject the Corporation's estoppel and statute of limitations arguments. These arguments do not defeat the claim preclusive effect of the 1974 California judgment.

The application of claim preclusion in California focuses on three questions: (1) was the previous adjudication on the merits, (2) was it final, and (3) does the current dispute involve the same "claim" or "cause of action"? *See Slater v. Blackwood*, 15 Cal.3d 791, 795, 543 P.2d 593, 594, 126 Cal.Rptr. 225, 226 (1975). The California Superior Court judgment was on the merits and final. *See Palma v. United States Industrial Fasteners, Inc.*, 36 Cal.3d 171, 182, 681 P.2d 893, 900, 203 Cal.Rptr. 626, 633 (1984). The Corporation does not challenge the 1974 judgment on either of these grounds. Instead, it argues that the dispute resolved by the district court in the two Robi cases does not involve the same claim or cause of action which was before the California Superior Court. The Corporation argues that the claim that was before the California Court involved the interpretation of the contract between Robi and the Corporation by which Robi allegedly transferred to the Corporation all of his rights in the name THE PLATTERS. The claims that were before the district court in the two Robi cases, the Corporation argues, involve the Corporation's trademark rights; and these trademark rights, it contends, are separate and distinct from the Corporation's contract rights.

We disagree. The Corporation is asserting in the present Robi cases the same right it asserted in the California case, that is, its claim to the exclusive use of the name THE PLATTERS as against Robi. The Corporation also presents the same legal theories in the current Robi cases as it did in the California case. Even if it were now asserting trademark and unfair competition theories, and only had asserted a contract theory before the California Court, the right which it now seeks to protect is the same right it sought to protect in California. "California has consistently applied the 'primary rights' theory, under which the invasion of one primary right gives rise to a single cause of action."

*Slater*, 15 Cal.3d at 795, 543 P.2d at 594, 126 Cal.Rptr. at 226. As we recently observed, California's "primary rights" theory "does not mean that different causes of action are involved just because relief may be obtained under ... either of two legal theories." *Los Angeles Branch NAACP v. Los Angeles Unified School Dist.*, 750 F.2d 731, 737 (9th Cir.1984) (en banc), *cert. denied*, 474 U.S. 919, 106 S.Ct. 247, 88 L.Ed. 2d 256 (1985).

The present Robi cases involve the same cause of action decided by the California Court in 1974. The claim preclusive effect of the 1974 California judgment precludes the Corporation from challenging Robi's use of the name THE PLATTERS. "*Res judicata* [claim preclusion] prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *State Bd. of Equalization v. Superior Court*, 39 Cal.3d 633, 641, 703 P.2d 1131, 1136, 217 Cal.Rptr. 238, 242, (1985) (quoting *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979)).

We conclude that the district court did not err in giving the 1974 California judgment claim preclusive effect in the Robi cases. It correctly granted Robi's motion for a preliminary injunction and dismissed the Corporation's complaint.

## IV

### THE WILLIAMS CASE

■ Like Paul Robi, Tony Williams has been engaged in a long battle with the Corporation over the name THE PLATTERS. Williams began his attack by challenging the Corporation's federal service mark registration. That challenge proved to be unsuccessful when Williams, perhaps due to inadvertence, did not oppose the Corporation's motion for summary judgment. *Williams v. Five Platters, Inc.*, 510 F.2d 963 (C.C.P.A.1975). When the Corporation later sued Williams in New York, the New York Court did not permit Williams to challenge the Corporation's service mark

registration. The New York Court gave *res judicata* effect (presumably claim preclusion) to the 1975 Court of Customs and Patent Appeals' decision. It rejected Williams' argument that Robi's 1974 California judgment should be given *"res judicata"* or *"collateral estoppel"* effect against the Corporation in Williams' case. The New York court noted that Williams had been "dilatory and unsuccessful [in providing the New York court with] an admissible transcript of the California lawsuit." It found that the claimed defects in the Corporation's issuance of stock in California were "technical"; that Williams had realized substantial benefits from his ownership of the shares and from his employment by the Corporation; and that there was "no evidence of unclean hands on the part of [the Corporation]."

The district court rejected the New York judgment and the decision of the Court of Customs and Patent Appeals on which the New York Court relied. The district court concluded that the New York Court had failed to give full faith and credit to the 1974 California judgment. Giving the California judgment the faith and credit the district court felt it deserved, the district court permitted Williams to use offensive issue preclusion (sometimes referred to as "offensive collateral estoppel") from the California judgment to defeat any claim preclusive effect of the New York judgment.

A trial court has broad discretion to apply offensive issue preclusion. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). Whether the district court abused this discretion is the issue we confront. To answer this question, we must first consider the *claim* preclusive effect of the New York judgment against Williams.

### A. *Claim Preclusion and the New York Judgment*

We look to New York law to determine the *res judicata* effect of the New York judgment against Williams. *See* 28 U.S.C. § 1738. Under New York law, a valid final judgment bars any future action between the same parties on the same cause of action. *See Reilly v. Reid,* 45 N.Y.2d 24, 27, 379 N.E.2d 172, 174, 407 N.Y.S.2d 645, 647 (1978). Whether claim preclusion applies in a particular New York case depends on the definition of a "cause of action." If the current Williams dispute involves the same cause of action as the New York case, which was concluded with a final judgment, then claim preclusion prevents any recovery in the current action. *Id.* New York courts generally require a plaintiff to include all possible theories of recovery for one transaction in one lawsuit, " 'regardless of the number of substantive theories or variant forms of relief ... available to the plaintiff.' " *Smith v. Russell Sage College*, 54 N.Y.2d 185, 192, 429 N.E. 2d 746, 749, 445 N.Y.S.2d 68, 71 (1981) (quoting Restatement (Second) of Judgments § 61 comment a (Tent. Draft No. 4, 1978)).

New York law, however, apparently departs from the Restatement formulation of claim preclusion. In New York, "two or more different and distinct claims or causes of action may often arise out of a course of dealing between the same parties, even though it is not, except in refined legal analysis, easy to say that a different gravamen is factually involved." *Reilly*, 45 N.Y.2d at 28, 379 N.E.2d at 175, 407 N.Y.S.2d at 648. One New York court applied *Reilly* to find three separate "causes of action" arising from a single transaction. *See Lukowsky v. Shalit,* 110 A.D.2d 563, 566–67, 487 N.Y.S.2d 781, 784 (1985). There the court held that a prior action for nonpayment of rent under a sublease agreement was not claim preclusive in a second action for fraud that challenged the validity of the same sublease agreement. This was true even though fraud was presented as a defense in the first action. The court reasoned that "the second [action] may not be barred if the requisite elements of proof and evidence necessary to sustain recovery vary materially" from the earlier action. *Id.* at 566, 487 N.Y.S.2d at 784. We are thus required to examine the earlier New York action and compare it to the present Williams action.

Long ago, Judge Cardozo, writing as the chief judge of the Court of Appeals of New York, stated that claim preclusion applies "when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first." *Schuylkill Fuel Corp. v. B. & C. Nieberg Realty Corp.*, 250 N.Y. 304, 306–07, 165 N.E. 456, 457 (1929). Relitigation of Williams' claims in the district court in this case would have necessarily impaired the Corporation's rights established by the New York judgment. Identical issues and indeed identical legal theories were presented in both cases: ownership of THE PLATTERS as determined by trademark law, the legal effect of the 1956 and 1967 contracts, and the *res judicata* effect of the 1974 California judgment. New York law protects the Corporation from being "vexed by further litigation" with Williams. *See Reilly*, 45 N.Y.2d at 28, 379 N.E.2d at 175, 407 N.Y.S.2d at 647.[4]

The dispute between Williams and the Corporation over the name THE PLATTERS is a single cause of action for purposes of claim preclusion under New York law. Both cases require a determination of whether the Corporation can prevent Williams from using the name THE PLATTERS. The cases certainly draw upon the same "congeries of facts." *See Smith v. Russell Sage College*, 54 N.Y.2d 185, 192, 429 N.E.2d 746, 749, 445 N.Y.S.2d 68, 71 (1981). "[W]here the same foundation facts serve as a predicate for each proceeding, differences in legal theory and consequent remedy do not create a separate cause of action." *Reilly*, 45 N.Y.2d at 30,

379 N.E.2d at 176, 407 N.Y.S.2d at 649. Accordingly, the New York judgment is claim preclusive against Williams. We now consider the effect this claim preclusion has on Williams' offensive use of issue preclusion.

### B. *The District Court's Application of Issue Preclusion*

At the time the district court granted summary judgment in favor of Williams, there were three cases in which *Robi* had prevailed against the Corporation on substantially the same set of facts involved in the present Williams case. One of the cases which had been decided in Robi's favor was the California action in which judgment had been entered in 1974. The other two were the two Robi cases which the district court had decided approximately seven months before it decided the Williams case. Under the doctrine of issue preclusion, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action." *Shapley v. Nevada Bd. of State Prison Commissioners*, 766 F.2d 404, 408 (9th Cir.1985). The issue in the prior action must be identical to the issue for which preclusion is sought. *Id.*[5] Only a final judgment that is "sufficiently firm" can be issue preclusive. *See Luben Indus. v. United States*, 707 F.2d 1037, 1040 (9th Cir.1983). The party against whom issue preclusion is asserted must have litigated that issue in an earlier action and lost. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979).[6]

---

4. We also note that Williams' present claim against the Corporation does not satisfy the "separate cause of action" exception under the New York rule of *Lukowsky v. Shalit*. In the litigation between Williams and the Corporation in New York, the New York Court considered precisely the same elements of proof and evidence that are relevant to proof of Williams' claim in his present case. The possibility that Williams did not fully pursue *res judicata* arguments available to him when presenting his case in New York does not alter this result.

5. The Corporation does not claim that issue preclusion is unfair because it did not have a

sufficient incentive to litigate the district court cases involving Robi and the 1974 California case. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979).

6. The requirement that issue preclusion can only be asserted against a party that already enjoyed one opportunity to litigate the issue prevents the Corporation from asserting in these consolidated appeals other decisions in its favor that do not involve Williams or Robi, such as *The Five Platters, Inc. v. Purdie*, 419 F.Supp. 372 (D.Md.1976).

Both the 1974 California judgment and the district court's earlier decision in the two Robi cases were final for purposes of issue preclusion. A final judgment "includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Restatement (Second) of Judgments § 13 (1982). The California judgment clearly was sufficiently firm to be accorded conclusive effect. So was the district court's judgment in the two Robi cases. The following factors, which we draw from the Restatement, were present in the Robi cases the district court decided: the parties were fully heard, the district court supported its decision with a reasoned opinion, and that opinion is the proper subject of appellate review. *See* Restatement (Second) of Judgments § 13 comment g (1982), *quoted in Luben Indus. v. United States,* 707 F.2d 1037, 1040 (9th Cir.1983).

The present appeals in no way affect the "firmness" of the Robi decisions in the district court for purposes of issue preclusion. *See United States v. Abatti,* 463 F.Supp. 596, 598–99 (S.D.Cal.1978) (Thompson, J.) (reasoning that "a decision rendered by a court of competent jurisdiction is presumptively correct"); Restatement (Second) of Judgments § 13 comment f (1982); 18 Wright § 4433, at 305 ("in federal courts ... the preclusive effects of a lower court judgment cannot be suspended simply by taking an appeal that remains undecided"). This conclusion is all the more reasonable in these consolidated appeals because we affirm the district court judgment in the Robi cases.

We conclude that the district court's decision in the Robi cases, as well as the California Court's decision in the 1974 Robi case, generated issue preclusion against the Corporation. We now return to the question we posed earlier: Did the district court abuse its discretion in applying offensive issue preclusion from these decisions to defeat the claim preclusive effect of the New York judgment?

**7.** The district court's simultaneous decisions in the Robi cases are so similar that we treat them

### 1. *The California Judgment*

As we have previously noted, the California Robi judgment preceded the New York Williams judgment. Because the New York judgment is later in time, and because it is claim preclusive against Williams, the district court could not apply any issue preclusive effect from the California judgment to defeat the claim preclusive effect of the later New York judgment. *Americana Fabrics, Inc. v. L & L Textiles, Inc.,* 754 F.2d 1524, 1530 (9th Cir. 1985).

### 2. *The District Court's Judgment in the Robi Cases*

Two conceptually distinct theories support application of offensive issue preclusion from the district court's decision in the Robi cases. First, it may be argued that the district court's decision in the Robi cases should prevail over the New York judgment as *res judicata* simply because the district court's judgment is the last judgment in time in a sequence of inconsistent judgments involving the right to the name THE PLATTERS.[7] *See id.* Second, as we have noted, the district court has broad discretion to decide whether to permit offensive issue preclusion to trump the claim preclusive effect of a prior judgment. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979).

#### (a) *The Last in Time Rule*

In *Americana,* we stated the general rule that when two courts face the same claim or issue, the second court to reach judgment should apply *res judicata* and therefore resolve the same claim or issue consistently with the first court. *Americana,* 754 F.2d at 1529. Sometimes, however, the second court reaches a different conclusion either because *res judicata* is not asserted by the parties in the second court or because the second court decides, rightly or wrongly, that *res judicata* does not apply. *Id.* If a third court is then presented with

as one decision in our analysis of the last in time rule.

the same claim or issue, it faces conflicting judgments from the first two courts. The general rule under these circumstances is that the third court "should give *res judicata* effect to the *last* previous judgment entered." *Id.* at 1530; *see also* Restatement (Second) of Judgments § 15 (1982). Likewise, if a fourth court faces three inconsistent judgments it should treat the third judgment (*i.e.*, the last in time) as *res judicata*. *Americana*, 754 F.2d at 1530 n. 2.

When the district court considered the present Williams action seeking declaratory relief, there were four relevant prior judgments for purposes of the last in time rule:

> (1) the California Court's 1974 judgment against the Corporation and in favor of Robi (issue preclusion),
>
> (2) the Court of Customs and Patent Appeals' 1975 judgment against Williams and in favor of the Corporation,
>
> (3) the New York Court's 1982 judgment in favor of the Corporation against Williams (claim preclusion), and
>
> (4) the district court's own simultaneous rulings in favor of Robi against the Corporation (issue preclusion).

*Americana* explained that one rationale underlying the last in time rule is "the implicit or explicit decision of the second court, to the effect that the first court's judgment is not *res judicata*, is itself *res judicata* and therefore binding on the third court." *Id.* at 1530 (citing *Porter v. Wilson*, 419 F.2d 254, 259 (9th Cir.1969)). Another rationale behind the last in time rule is the finality that it offers to the litigants. The rule finds support in the societal interest in " 'end[ing] the chain of relitigation ... by stopping it where it [stands].' " *Americana*, 754 F.2d at 1530 (quoting *Porter v. Wilson*, 419 F.2d at 259). As Judge Sneed stated, the most recent decision "is not binding because it is correct; it is binding because it is last." *Id.* This concept of finality is central to the entire body of *res judicata* doctrine. *See* 18 Wright § 4403, at 15.

The rationale that a subsequent court's consideration of prior judgments is itself *res judicata* assumes that the subsequent court could have or did consider the *res judicata* effect of earlier cases. *See Americana*, 754 F.2d at 1530; Restatement (Second) of Judgments § 15 comment b (1982). The district court, however, could not have considered either the claim preclusive or issue preclusive effect of the New York judgment against Williams when it decided the two Robi cases. Robi was not a party to the New York litigation between the Corporation and Williams. And the Corporation won that case. Therefore, so far as Robi was concerned, the New York judgment had no *res judicata* effect, either as to claim preclusion or issue preclusion, in Robi's cases. *See Lawlor v. National Screen Serv. Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955). There was no issue, express or implied, in the two Robi cases concerning whether the New York judgment had any *res judicata* effect. *See Americana*, 754 F.2d at 1530. The first rationale for the last in time rule which we articulated in *Americana* is absent.

The second rationale of *Americana* underpinning the last in time rule, that of ending the chain of litigation by following the judgment which is last in time, would be better served in Williams' case by giving *res judicata* effect to the New York judgment, not to the district court's Robi judgments. The New York judgment is the last in time in which both Williams and the Corporation were parties. We can think of no rational reason to permit Williams to avoid the claim preclusive effect of the New York judgment by trying to draw issue preclusion from a subsequent case in which he was not involved. Williams participated in the New York case and let the judgment in that case become final without appealing it. "If an aggrieved party believes that the second court [New York] erred in not giving *res judicata* effect to the first court's [California's] judgment, then the proper avenue of redress is appeal of the second court's judgment, not collateral attack in a third court." *Americana*, 754 F.2d at 1530.

**(b)** *Discretion to Apply Offensive Issue Preclusion*

In *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552

(1979), the Supreme Court outlined some potential hazards that could arise if offensive issue preclusion were applied under inappropriate circumstances.[8] Nonetheless, the Court concluded that the advantages of avoiding burdensome relitigation on identical issues and promoting judicial economy warranted permitting the use of offensive issue preclusion at the discretion of the trial court: "[T]he preferable approach for dealing with [the tension between issue preclusion's advantages and disadvantages] in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied." *Id.* at 331, 99 S.Ct. at 651. In the present Williams case, the district court exercised its discretion and applied offensive issue preclusion against the Corporation. We will not disturb a district court's exercise of discretion unless we have " 'a definite and firm conviction that the court ... committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.' " *Fjelstad v. American Honda Motor Co.,* 762 F.2d 1334, 1337 (9th Cir.1985) (citations omitted).

In outlining guidelines for district courts to consider when determining whether to apply offensive issue preclusion, the Court described two basic purposes for issue preclusion: "protecting litigants from the burden of relitigating an identical issue with the same party or his privy and ... promoting judicial economy by preventing needless litigation." *Parklane,* 439 U.S. at 326, 99 S.Ct. at 649. The Court recognized that these purposes might be disserved by the application of offensive issue preclusion in some circumstances. Indeed, offensive issue preclusion was expected to "increase rather than decrease the total amount of

litigation." *Id.* at 330, 99 S.Ct. at 651. The Court encouraged district courts, however, to apply offensive issue preclusion in such a way that the incentives to increase rather than decrease the total amount of litigation would be minimized. *See id.* at 331, 99 S.Ct. at 651. The Court observed that offensive issue preclusion allows potential plaintiffs to benefit by waiting on the sidelines rather than joining in the first litigation. This is true because an interested observer will be able to rely on a judgment favorable to his interests against the defendant and yet not be bound by that judgment if the defendant wins. *Id.* at 330, 99 S.Ct. at 651. The potential for this abuse exists in a case such as the present one.

The *Parklane* Court also cautioned that use of offensive issue preclusion may be unfair to some defendants. *Id.* It identified one example of such possible unfairness as the application of offensive issue preclusion in the presence of inconsistent judgments. "Allowing offensive collateral estoppel may also be unfair to a defendant if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant." *Id.* Williams' appeal presents this circumstance. The district court applied offensive issue preclusion in the presence of the inconsistent New York judgment in favor of the Corporation.[9]

The Court in *Parklane* looked to the Restatement (Second) of Judgments to explain why offensive issue preclusion should not be applied to inconsistent judgments. *See id.* at 330–31 nn. 14–16, 99 S.Ct. at 651 nn. 14–16 (discussing the Restatement (Second) of Judgments § 88 (Tent.Draft No. 2, Apr. 15, 1975), the precursor to current § 29). The Restatement states that one

---

8. The Court defined offensive issue preclusion, then described as offensive collateral estoppel, as occurring when "the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Parklane,* 439 U.S. at 326 n. 4, 99 S.Ct. at 649 n. 4.

9. As an illustration of the unfairness which could result from the application of offensive issue preclusion in the face of inconsistent judgments, the Court in *Parklane* referred to Profes-

sor Currie's example of a railroad collision injuring 50 passengers all of whom bring separate actions against the railroad. After the railroad wins the first 25 suits, a plaintiff wins in suit 26. Professor Currie argues that offensive issue preclusion should not be applied so as to allow plaintiffs 27 through 50 automatically to recover. *Parklane,* 439 U.S. at 330 n. 14, 99 S.Ct. at 65 n. 14, *citing* Currie, *Mutuality of Estoppel: Limits of the Bernhard Doctrine,* 9 Stan.L.Rev. 281, 304 (1957).

purpose of issue preclusion is to promote confidence in the accuracy of judicial determinations. One way this can be achieved is to stop a second court from rendering an inconsistent judgment by applying the doctrine of issue preclusion. *See* Restatement (Second) of Judgments § 29 comment f (1982). The District of Columbia Circuit has interpreted *Parklane* to prohibit the application of offensive issue preclusion "where the judgment relied on is inconsistent with other decisions." *Jack Faucett Assocs. v. American Tel. and Tel. Co.*, 744 F.2d 118, 125–26 (D.C.Cir.1984), *cert. denied*, 469 U.S. 1196, 105 S.Ct. 980, 83 L.Ed. 2d 982 (1985). We do not read *Parklane* to be this restrictive. We prefer to read *Parklane* as providing guidance to the district courts for the appropriate exercise of discretion as to when to apply offensive issue preclusion in the presence of inconsistent judgments. In our case, however, it is not just the presence of inconsistent judgments which renders unfair the application against the Corporation of issue preclusion generated by the district court's Robi judgments. The unfairness to the Corporation is magnified enormously when, as in the present case, the judgment which generates issue preclusion (the district court's Robi judgment) is itself inconsistent with a judgment (the New York judgment) which the Corporation has obtained against the very plaintiff, Williams, on whose behalf issue preclusion is asserted. This is different from the scenario in *Parklane*. There the party against whom issue preclusion was asserted had experienced inconsistent judgments in litigation with parties other than the present party opponent. *Parklane*, 439 U.S. at 324, 329, 99 S.Ct. at 650, *see also* Restatement (Second) of Judgments § 29 comment f (1982).

We conclude that the district court erred in applying offensive issue preclusion against the Corporation in Williams' case in the face of the claim preclusive effect of the New York judgment against Williams.

## V

## CONCLUSION

We affirm the district court's grant of the preliminary injunction in favor of Robi in appeal No. 85–6061. We affirm the district court's dismissal of the Corporation's complaint against Robi in appeal No. 85–6062. We reverse the district court's grant of summary judgment in favor of appellee Williams and against the Corporation in appeal No. 87–5514, and remand that case to the district court with instructions to vacate the summary judgment in favor of Williams and enter summary judgment in favor of the Corporation, The Five Platters, Inc.

Appellee Robi shall recover his costs on appeal in appeals No. 85–6061 and No. 85–6062. The Corporation shall recover its costs on appeal in appeal No. 87–5514.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.