KAMILCHE COMPANY and Simpson Redwood Company, corporations, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. C–91–0476–CAL.

United States District Court, N.D. California.

Dec. 28, 1992.

Ed Kolto, Alson R. Kemp, Pillsbury Madison & Sutro, San Francisco, CA, Michael D. Dwyer, for plaintiff.

William T. McGivern, Jr., U.S. Atty., San Francisco, CA, for defendant.

## OPINION AND ORDER FOR JUDGMENT

LEGGE, District Judge.

### I.

Plaintiff[1] brings this action for a refund of federal income taxes. The claim for refund arises from a charitable contribution deduction which plaintiff claimed on its 1987 income tax return. The charitable contribution was for plaintiff's alleged donation of real property to the State of California in 1987. Defendant denied the charitable deduction, primarily on the basis that plaintiff did not own the real property that plaintiff purported to donate.

### II.

The parties made cross motions for full or partial summary judgment. The parties then agreed that the issues on the cross motions could be resolved as a court trial. That is, the record and the briefs were augmented, and the issues were then submitted to this court as in a non-jury trial. That procedure enables this court to resolve the factual disputes, rather than to decide only those issues that are without a genuine issue of material fact as required by Rule 56 of the Federal Rules of Civil Procedure. The parties' records and briefs were augmented, argued, and submitted for decision.

The court has reviewed the record, the evidence, the briefs and arguments of the parties and the applicable authorities, and the court now orders judgment in favor of defendant the United States. This Opinion and Order constitute the findings of fact and conclusions of law required by Rule 52 of the Federal Rules of Civil Procedure. The facts stated in this Opinion and Order are found to be facts by a measure of a preponderance of the evidence.

### III.

The dispute concerns the boundary line between the State of California's Prairie Creek State Park and land owned by plaintiff, in township 12 north, range 1 east, H.B. & M. The boundary line between those properties runs through the township, in a generally diagonal direction and stair-step shape, between northwest and southeast. The land south and west of the line has been maintained as a state park, and the land north and east of the line has been owned and logged by plaintiff.

Two surveys of the township were done in the late 1800s, the first by Foreman and a later one by Gilcrest. The surveys were not consistent, and the inconsistencies created a potential land hiatus. Landowners in the area generally followed the more recent Gilcrest boundaries. However,

---

**1.** Plaintiffs Kamilche Company and Simpson Redwood Company are subsidiary and parent corporations. For purposes of this case there is no need to distinguish between them, so they are generally referred to herein as "plaintiff."

property lines in the township were subject to the cloud of the inconsistent Foreman and Gilcrest surveys for many years. For example, a policy of title insurance issued to plaintiff in 1959 specifically referred to the irregularities of surveys and boundaries, and to the Gilcrest survey differing from the Foreman survey.

In the late 1970s, the township was resurveyed by the United States Bureau of Land Management. That survey was recorded on March 10, 1981. It in essence reconfirmed the older Foreman survey, and determined that the true borders of the township were actually further to the south and west than had been established by the Gilcrest survey. The changing of the borders of the township also affected the section lines within the township, and parcel lines that were based on the township or section lines.

For purposes of this litigation, the effect was to shift the line separating the state park and plaintiff's property to the south and west, leaving a strip of property between the newly established line and the line previously established by the Gilcrest survey. That strip of property totals approximately 158 acres. This is the property at issue here.

In 1987 plaintiff executed a quit claim deed to the 158 acres to the State of California. Based upon that quit claim deed, plaintiff claimed a charitable contribution deduction on its 1987 income tax return, which the United States denied.

The basic question is whether plaintiff owned this strip of land which it purported to donate to the State of California. For the reasons stated below, this court finds and concludes that the true line between the state property and plaintiff's property is the one to the south and west of the previously recognized Gilcrest line. However, the court also finds and concludes that the State of California obtained title to that piece of property by adverse possession, and therefore that plaintiff did not own the property which it purported to

contribute to the State of California in 1987.

## IV.

■ The first issue is what is the true line between the state property and plaintiff's property. The United States contends that it is the line that had been accepted for many years, based on the Gilcrest survey, so that there is no strip of property owned by plaintiff. Plaintiff contends that as a result of the 1981 B.L.M. survey, the true line is to the south and west of the Gilcrest line, and that plaintiff owns the strip of land between the B.L.M. line and the Gilcrest line.

This court finds and concludes that prior litigation between these parties has already established that the true line is the one which lies to the south and west, thereby creating the strip of property which plaintiff claims to own. That result is collateral estoppel against the United States in this case.

## A.

The prior litigation was a suit in this court between the United States and plaintiff Simpson, No. C–84–2028–TEH.[2] In that case, the United States condemned a strip of land to construct a bypass of U.S. Highway 101. The condemned land included an area of 3.49 acres, which is within the strip of property at issue in the present case. In that action, Simpson claimed title to the 3.49 acres and moved for a summary adjudication that it owned that parcel, as well as all other land in the township taken by the United States for the highway bypass. In order to establish that position, Simpson argued that the same dividing line which is at issue in this case was the B.L.M. line. In an order of May 24, 1988 Judge Henderson found that there were no triable issues of fact as to several issues, including the determination that the "Foreman Survey of 1882 controls the location of all land within" the township. The lines of the Foreman survey are the ones which

**2.** There has been other litigation involving property in the same area between Simpson, the United States and the State of California, which

the court does not believe to be relevant to the issues in the present case.

were accepted by the 1981 recorded survey by the B.L.M., and which resulted in the line south and west of the Gilcrest line. Based upon that and other findings, Judge Henderson granted summary judgment in favor of Simpson's ownership of the 3.49 acres.

 Collateral estoppel prevents a party from relitigating an issue which has already been determined. Collateral estoppel applies: (1) when an issue of fact or law was fully and actually litigated and determined, (2) by a valid final judgment, and (3) the determination was essential to that judgment. If those criteria are met, the prior determination is conclusive in subsequent litigation between the parties, whether on the same or a different claim. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Pena v. Gardner*, 976 F.2d 469 (9th Cir. 1992); *Robi v. Five Platters, Inc.*, 838 F.2d 318 (9th Cir.1988).

 There is no doubt that there was a valid final judgment in the case before Judge Henderson. Disposition by summary judgment is a decision on the merits, and it is as final and conclusive as a judgment after trial. *Jackson v. Hayakawa*, 605 F.2d 1121 (9th Cir.1979).

The first question here is therefore whether the issue of the Foreman line was actually litigated and determined by Judge Henderson. Simpson raised the issue in its moving papers. And Judge Henderson's order clearly states that the Foreman survey established the true lines within the township.

Judge Henderson's decision also meets the third test, that the determination be essential to the judgment. In order to determine whether the condemned parcel belonged to Simpson, so that Simpson could receive the condemnation value of the property, it was necessary to determine which line formed the dividing line between the state property and Simpson's property. Judge Henderson found that the correct line was the Foreman line, the one to the south and west, and hence Simpson owned the parcel condemned by the government. That parcel was a part of the strip of property at issue in the present case. Because Judge Henderson found that the "Foreman Survey controls the location of all land within" the township, that established the line at issue here.

### B.

The United States raises several arguments against the application of collateral estoppel to the issue of the true line.

First, it argues that the issue of the ownership of the entire 158 acres was not before Judge Henderson. That is correct. But in order for Judge Henderson to make a decision on the parcel of land at issue in that case, he had to determine whether the correct line between the state and the Simpson property was the Gilcrest line or the Foreman line reestablished by the B.L.M. Since the ownership of the parcel at issue there depended upon the location of the line, its judicial establishment must also apply to the rest of the property defined by the same line.

The United States attempts to undercut Judge Henderson's decision by arguing that a declaration filed in a state court contained a material statement on the issue which was incorrect and misleading. However, the United States does not show how the declaration in the state court was relevant to Judge Henderson's decision. And it is further questionable whether the United States can make a collateral attack in this proceeding on the evidentiary foundation for Judge Henderson's decision, particularly based on a filing in another court.

 Finally, the United States argues that the amount in controversy here is much greater than that involved in the case before Judge Henderson. That is of course correct. The dispute here involves several million dollars, while in the prior action the $300,000 value of the property was at stake. However, the only relevance to examining the amounts in issue is to determine whether the United States had an incentive to litigate the issue in the prior case. *See Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1284 (9th Cir.1986). $300,000 was certainly a large

enough sum of money to create an incentive for the United States to litigate the issue of Simpson's ownership of that portion of this property. And the United States did so vigorously.

This court therefore concludes that the true line between the state and the Simpson properties is the one based on the Foreman survey, which lies to the south and west of the Gilcrest line, and that the 158 acres at issue here is on Simpson's side of the true line.

## V.

The next issue is whether the State of California nevertheless acquired title to the 158 acres by adverse possession, and not by plaintiff's later 1987 quit claim deed. It is clear that the park itself extended to the prior northeasterly line, the Gilcrest line, and that plaintiff clearcut the trees on its property down to that border of the park.

■ The determination of whether the state acquired title to the property by adverse possession is governed by state law. *Magneson v. Commissioner*, 753 F.2d 1490, 1495 (9th Cir.1985) ("In application of federal tax statutes, state law controls in determining the nature of the legal interest the taxpayer holds in the property sought to be taxed. Federal law does not create or define property rights; it merely attaches tax consequences to the interests created by state law").

## A.

■ Plaintiff argues that Judge Henderson's decision in C–84–2028 decided this adverse possession issue in favor of Simpson, and that collateral estoppel bars the United States from asserting the state's adverse possession in this action. However, the issue of adverse possession was not litigated in the case before Judge Henderson.

It is true, as plaintiff argues, that Judge Henderson determined that plaintiff "owned" the land which was taken in condemnation. And the United States could have, but did not, assert the adverse possession of the State of California as a defense to that determination. Simpson filed a cross complaint against the state, but it was dismissed for lack of jurisdiction on October 22, 1984. In June 1985, Judge Henderson specifically determined that he would not resolve the position of the state with respect to the parcel for the Highway 101 bypass. He directed Simpson to initiate a quiet title action against the state in state court. Simpson and the state then apparently settled the issue, and the state agreed that it would not claim an interest in the parcel. That did not constitute the actual litigation of the issue.

Collateral estoppel or issue preclusion requires both that an issue was "actually litigated" and that it be "necessarily decided" in the prior proceeding. *Robi v. Five Platters, Inc.*, 838 F.2d 318 (9th Cir.1988). Plaintiff cites California authority which is allegedly to the contrary; *e.g. Wood v. Herson*, 39 Cal.App.3d 737, 114 Cal.Rptr. 365 (1974). However, that earlier California authority incorrectly confuses the principles of collateral estoppel and issue preclusion on the one hand, with claim preclusion on the other, as the Ninth Circuit explained in *Robi:*

> Claim preclusion prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties regardless of whether they were asserted or determined in the prior proceedings. (*Robi* at pg. 322.)

■ However, claim preclusion applies only to subsequent litigation between the same party on the identical cause of action. *Robi* at pg. 321. There is nothing in the record to indicate that the state's adverse possession was actually litigated. And therefore it is not enough that a logical extension of Judge Henderson's reasoning in the first case should bar the United States from litigating the adverse possession of the state in this case.

This court therefore finds and concludes that the United States is not collaterally estopped from raising the issue of adverse possession by the State of California in this case.

## B.

Plaintiff then argues that the United States should be *equitably* estopped from asserting the state's adverse possession. That argument is on the grounds that the United States had encouraged private parties to rely upon the erroneous Gilcrest line, had assured private parties that the government owned no land between this township and the one to the east, and had represented that it would not resurvey the township on its own initiative. The essence of the argument is that because the United States led plaintiff to believe that plaintiff did not own the land in question, it would be unjust to permit the United States to argue that the state had acquired title to the property by adverse possession.

However, the requirements for estoppel of the United States are more stringent than stated in plaintiff's argument. As stated by the Ninth Circuit in *Rider v. U.S. Postal Service,* 862 F.2d 239 (9th Cir.1988) at pg. 240:

> The federal government may not be estopped on the same terms as other litigants. In addition to the traditional requirements for estoppel, this circuit requires a showing of *affirmative misconduct* going beyond mere negligence. (Emphasis added).

That principle has been applied by the Ninth Circuit in a case which is strikingly similar to the instant case; *United States v. Ruby,* 588 F.2d 697 (9th Cir.1978). In *Ruby,* the United States brought a quiet title action to "omitted lands" that lay between the boundaries of an earlier fraudulent survey and a later survey later done by the Bureau of Land Management. The defendants there argued that the United States should be equitably estopped from claiming ownership of the disputed lands because:

> (1) The government became aware of the fraudulent survey as early as 1922, (2) the landowners and others relied on the government's refusal to resurvey after the 1922 investigation, (3) the landowners acted in good faith without notice of the erroneous nature of the survey, and (4)

the landowners and their predecessors relied on the [prior] survey. (p. 701).

The Ninth Circuit rejected those arguments. It determined that there was no "affirmative misconduct" by the government, which the court deemed to require "an affirmative misrepresentation or affirmative concealment of the material fact by the government." *Ruby* at 704–5.

Similarly, there is no affirmative misconduct by the United States in this case. Certainly there was no affirmative concealment of any material fact by the government. The government did not know what the lines would be until the 1981 survey was completed. It was a proper governmental function for the United States to determine in the 1970s that so many problems had been raised by the prior inconsistent surveys that a new federally conducted survey was necessary.

## C.

The court now turns to the requirements of California law for the acquisition of title by adverse possession by the State of California. There are two relevant code sections, California Code of Civil Procedure sections 322 and 325.

Section 322 sets forth the requirements where the claimant (here the State of California) enters into possession of the property under a claim of title based upon a written conveyance of the property, or upon the judgment of a court. If that situation applies, then the property is adversely held if there has been continued occupation and possession of the property, or some part of it, for five years.

Conversely, section 325 defines adverse possession by a claimant *not* claiming title based on a written instrument or judgment. In such a situation, adverse possession also requires protection of the property by a substantial enclosure, and cultivation or improvement.

Section 325 goes on to provide that, under either section 322 or section 325, adverse possession is not established unless the land has been occupied and claimed for a period of five years and the claimant has

paid all taxes which have been levied and assessed upon the property.

■ There is no doubt that the state has occupied the strip of property continuously for at least five years. As stated, the park land extended to the northeasterly line. The state marked the boundary of the park with signs and monuments, such as signs on trees, boundary stakes, surveyors' monument blazes, marks in trees, memorial grove signs, and other indicia of the property being a state park. It is also clear from the record that plaintiff clearcut the timber on its side of the line down to that park boundary.

Plaintiff argues that the requirements of enclosure, cultivation or improvement in C.C.P. 325 apply here. The United States contends that section 322, which does not include the enclosure, cultivation or improvement requirements, is the applicable section.

This court concludes that section 322 is the applicable one. The state has maintained the park property, using the northeasterly line as the boundary, by virtue of earlier deeds to it of the various parcels making up the park.[3] There is no dispute as to the validity of the state's title to its property. The only issue has been the physical location of the line on the ground. The state at all times claimed title to its park property up to the northeasterly line, and did so on the basis of its prior deeds. For a claim of adverse possession to be under a claim of written title, it is not necessary that the deed be free of defects. In *Thomson v. Dypvik*, 174 Cal.App.3d 329, 220 Cal.Rptr. 46 (1985), the court said (p. 339): "However, where they (the instrument and judgment) only create an appearance of title and do not actually confer title, the law refers to the possessor as having 'color of title.'" *See also Estate of Williams*, 73 Cal.App.3d 141, 147, 140 Cal. Rptr. 593 (1977).

Having put signs around the park identifying it as park land, up to the northeasterly line, the state's occupation of the ground was certainly real, adverse to the claims of others, and hostile to the claims of others.

### D.

■ As stated, C.C.P. section 325 requires, regardless of the code section under which adverse possession is claimed, that the claimant have paid all taxes which have been levied and assessed upon the land.

However, the payment of taxes is not a requirement if no taxes were assessed. *See City of Burlingame v. Norberg*, 210 Cal. 105, 108, 290 P. 587 (1930). In this case, evidence from the county assessor demonstrates that no taxes were assessed on this strip of property because the property was believed to belong to the state. And no conduct on the part of the state or the United States resulted in any representation to the contrary. It was not until the 1981 survey was recorded, and the application of that survey later determined by Judge Henderson, that anyone determined that the strip of land was not a part of the state park.

The record also establishes that when the county assessed the property owned by Simpson, the county assessor did not include any property within the confines of the state park. And there is no authority for the proposition, asserted by plaintiff, that adverse possession can be defeated because of the failure to pay taxes that should have been or might have been, but were not, assessed by the county authorities.

This court therefore finds and concludes that the State of California had acquired title to the property in dispute here by virtue of adverse possession. Therefore plaintiff did not own the land which it purported to quit claim to the State of California by the deed in 1987.

### VI.

Because of the findings and conclusions above, it is not necessary for this court to make any findings or conclusions with respect to additional arguments of the par-

---

**3.** This court does not know if any of the park property was obtained by judgment in eminent domain. But that means of acquisition of title would also invoke section 322.

ties, including: the principle of agreed boundaries, the issue of donative intent, or the value of the property.

IT IS THEREFORE ORDERED the judgment be entered in favor of defendant The United States of America and against plaintiffs Kamilche Company and Simpson Redwood Company.