**Mario Moreno IVANOVA and the Estate of Mario Moreno Reyes ("Cantinflas"), Plaintiffs,**

v.

**COLUMBIA PICTURES INDUSTRIES, INC., a Delaware corporation and Does 1 to 5, Defendants.**

**No. CV 03–1033 DT (CWx).**

United States District Court, C.D. California.

June 9, 2003.

Timothy C. Riley, Law Offices of Timothy C. Riley, Pasadena, CA, for Mario Moreno Ivanova and the Estate of Mario Moreno Reyes.

Henry J. Tashman, Jennifer L. Brockett, Davis Wright Tremaine LLP, Los Angeles, CA, for Columbia Pictures Industries, Inc.

ORDER GRANTING DEFENDANT CO-LUMBIA PICTURES INDUSTRIES, INC.'S MOTION FOR RULE 11 SANCTIONS AGAINST PLAINTIFFS MARIO MORENO IVANOVA, THE ESTATE OF MARIO MORENO REYES AND THEIR COUNSEL TIMOTHY C. RILEY

TEVRIZIAN, District Judge.

## I. *Background*

This action is brought by Plaintiffs Mario Moreno Ivanova and the Estate of Mario

Moreno Reyes (collectively, "Ivanova") against Defendant Columbia Pictures Industries, Inc. ("Columbia") for (1) unfair competition in violation of California Business and Professions Code § 17200 et seq., (2) copyright infringement in violation of 17 U.S.C. §§ 501, 506(a) and 18 U.S.C. § 2319, (3) breach of contract, (4) copyright infringement in violation of the 1996 Mexican Federal Copyright Law, (5) intentional interference with contracts, and (6) intentional interference with prospective economic advantage.

### A. Factual Summary

The following facts are alleged in the Complaint:

Plaintiff Mario Moreno Invanova is the executor and successor-in-interest to the estate of his father, Mario Moreno Reyes, a famous Mexican actor, writer and producer better known during his lifetime by his film name "Cantinflas." (*See* Complaint, ¶ 1.) The Cantinflas estate is the owner of the Mexican copyright to 20 Cantinflas films ("the 20 Pictures"). (*See id.*) Each of the 20 Pictures fell into the U.S. public domain years ago because of worldwide publication without copyright notice and failure to make registrations with the U.S. Copyright office during the first 28 year term. (*See id.* at ¶ 2.) Under 17 U.S.C. § 104A, U.S. copyrights were restored as of January 1, 1996 to the "author" or "initial rightholder" as determined by Mexican law. (*See id.* at ¶ 3.) Cantinflas and his corporations were the authors of the 20 Pictures under Mexican law, and his estate succeeded to those rights upon his death. (*See id.*) The Cantinflas estate is the owner of the restored U.S. copyrights to these 20 classic Mexican films. (*See id.*)

The Cantinflas estate is also the owner of the Mexican copyright to 6 Cantinflas films ("the 6 Pictures"). (*See id.* at ¶ 4.) The Cantinflas estate is also either the sole owner or the 65% owner of the Mexican copyrights to 7 Cantinflas films ("the 7 Pictures"). (*See id.* at ¶ 5.) With respect to U.S. copyright ownership of the 7 Pictures, the Cantinflas estate is the sole owner of the U.S. copyrights. (*See id.* at ¶ 6.)

In addition, as a separate and independent basis for ownership of the Mexican copyrights to these films (the 20 Pictures, the 6 Pictures, and the 7 Pictures), the highest civil appellate court in Mexico ruled in favor of the Cantinflas estate following 3 years of litigation over ownership of these classic Mexican films. (*See id.* at ¶ 7.) On or about June 20, 1996, by a ruling of the First Collegiate Circuit Court of Mexico, the Cantinflas estate was adjudged the owner of the films at issue here. (*See id.*)

Columbia and/or its affiliates has distributed the 20 Pictures and the 6 Pictures under a claim of rights under a 1979 contract that required Columbia to pay 35% of the gross proceeds to Cantinflas and/or certain successors of Cantinflas. (*See id.* at ¶ 11.) Columbia has distributed the 7 Pictures under a claim of rights under an amalgam of old contracts. (*See id.* at ¶ 12.) Under those agreements, Columbia was entitled to distribution fees of between 15.5% and 25%, and Columbia paid Cantinflas or his successors the balance of the proceeds for many years. (*See id.*) Those contracts have all expired. (*See id.*)

Columbia has been distributing the 7 Pictures under a claim of rights under unspecified contracts and paying to Cantinflas or his successors/assigns between 75% and 87.5% of the gross proceeds, keeping the balance (12.5% to 25%) as its distribution fee. (*See id.* at ¶ 18.) The contracts pursuant to which Columbia distributed the films do not extend to television distribution and expired. (*See id.* at ¶ 19.) Against the written demands of the Cantinflas estate, Columbia distributed the 7 Pictures throughout the world through December 31, 2000 pursuant to the claimed rights under the limited licenses. (*See id.* at ¶ 20.) This distribution constitutes copyright infringement. (*See id.*)

In about June 2001, the Cantinflas estate sought to distribute the 7 Pictures and an additional Cantinflas picture via the medium of television throughout the world except Mexico and entered into a valid and enforceable contract for that purpose. (*See id.* at ¶ 22.) The Cantinflas estate stood to earn an advance of $150,000 plus in excess of $1,500,000 in revenue from a well-known Mexican distributor. (*See id.*) Columbia

had knowledge of the contract and the amounts that the Cantinflas estate expected to receive. (*See id.*) In about June and July 2001, Columbia claimed that it had rights to the 7 Pictures and the additional picture under the expired limited licenses; it communicated this claim along with threats to the Mexican distributor, and it made repeated threats to the Cantinflas estate regarding liability that the estate would face it if distributed its films. (*See id.* at ¶ 23.) These claims and threats caused the Mexican distributor to back out of the deal and breach its contract with the estate. (*See id.*)

In or about March 2001, Columbia sent correspondence, other communications and certain distribution statements to the Cantinflas estate which indicated that Columbia had abruptly stopped all payments to the Cantinflas estate under the 1979 license agreement pursuant to which Columbia claimed it had the right to distribute the 20 Pictures and the 6 Pictures. (*See id.* at ¶ 24.) Columbia had no legal right under the 1979 license agreement to stop payments, and it made its announcement at that time for the specific purpose of letting the Cantinflas estate know that it was going to commence illegal financial starvation of the Cantinflas estate unless the estate settled the lawsuit between Columbia and the Cantinflas estate involving claims to the Cantinflas films at issue. (*See id.* at ¶ 25.) At that time in March 2001, Columbia suddenly claimed that it had the right to keep all proceeds from the 20 Pictures and the 6 Pictures to recoup its attorney's fees which it would henceforth consider to be "distribution expenses." (*See id.* at ¶ 26.) The contract pursuant to which Columbia claimed the right to distribute the 20 Pictures and the 6 Pictures did not permit such deduction. (*See id.*)

The Cantinflas estate entered into what is called in Mexico a "promise of contract" with Grupo Televisa S.A. ("Televisa") in about December 1998 related to the distribution of the 20 Pictures, the 6 Pictures and the 7 Pictures in the nation of Mexico. (*See id.* at ¶ 28.) Under the promise of contract, Televisa was required to enter into a definite contract with the estate wherein the estate was to have earned in excess of $6,000,000 from distribu-

tion of its films entirely within the nation of Mexico. (*See id.*) Notwithstanding the fact that the judgment of the U.S. District Court gave no rights to Columbia as to the 7 Pictures and no rights cognizable in Mexico as to the 20 Pictures and the 6 Pictures, Columbia has contacted Televisa claiming to own the rights to distribute the 20 Pictures, the 6 Pictures, the 7 Pictures and the additional picture in Mexico and throughout the world. (*See id.* at ¶ 30.) The threats and claims of Columbia have caused Televisa to stop performance of the promise of contract, to refuse to enter into a definite contract and make the required payments and caused irreparable harm to the Cantinflas estate in both the loss of the $6 million in revenue and loss of the future distribution opportunities. (*See id.* at ¶ 32.)

## B. Procedural Summary

On February 12, 2003, Ivanova filed the Complaint.

On March 12, 2003, Columbia filed its Answer and a Counterclaim for (1) rescission based on failure of consideration, (2) damages based on breach of contract, (3) infringement of Columbia's Mexican copyrights and exclusive worldwide distribution rights in the 26 Pictures, (4) tortious interference with prospective business advantage with respect to the 26 Pictures, (5) slander of title for the 26 Pictures, (6) cancellation of cloud on title for the 26 Pictures, (7) infringement of Columbia's Mexican copyrights and exclusive worldwide distribution rights for the 8 Pictures, (8) slander of title for the 8 Pictures, and (9) cancellation of cloud on title for the 8 Pictures.

On May 2, 2003, Columbia filed a First Amended Counterclaim.

On May 7, 2003, Columbia filed a Motion for Rule 11 Sanctions Against Plaintiffs and Their Counsel Timothy C. Riley, which is before this Court.

On May 23, 2003, Plaintiff the Estate of Mario Moreno Reyes filed an Ex Parte Application for Order Permitting Withdrawal and Refiling of Opposition Papers or in the Alternative Filing Exhibit K to Opposition Papers Under Seal.

On May 27, 2003, Ivanova filed an Answer to First Amended Counterclaim.

On May 30, 2003, this Court issued an Order Regarding Ex Parte Application of the Estate of Mario Moreno Reyes for Order Permitting Withdrawal and Refiling of Opposition Papers.

## II. *Discussion*

### A. *Background facts for this Motion* [1]

#### 1. The 1997 Action

From January 1997 until January 2003, Columbia and Ivanova litigated their dispute regarding ownership of the worldwide intellectual property rights and related rights in the 34 Pictures[2] in the action entitled *Eduardo Moreno Laparade v. Columbia Pictures Industries, et al.*, Case No. 97–0615 WJR (Ctx) (the "1997 Action"), which was assigned to Judge Rea. In the 1997 Action, Columbia sought a declaration that it owns 26 of the 34 Pictures, including all worldwide intellectual property rights, United States copyrights and related rights. Columbia also alleged that it had more limited rights of first refusal and/or options in 7 of the remaining 8 Pictures.

Ivanova claimed to be the sole owner of the all U.S. and Mexican rights in all 34 Pictures. Ivanova also argued that many of the Pictures had fallen into the public domain in the U.S. and were restored to the author of the work pursuant to 17 U.S.C. § 104A; that the authors of the films were the production companies which made those films; and that he had exclusively succeeded to the restored copyrights by contract.

At the parties' request, the bench trial was held in phases. Following the first trial phase, and upon consideration of the testimony of three expert witnesses, Judge Rea concluded "that under Mexican law the producers are the authors of the Motion Pic-

tures." The Court then ruled that "the second phase of the trial [shall] resolve the issues concerning contractual ownership of the [34] films . . . ." Following the 11 day second trial phase, during which 11 additional witnesses testified and more than 1200 exhibits were received into evidence, both parties submitted comprehensive post-trial briefs regarding their respective claims that each owned the worldwide rights—including copyrights—in the Pictures. Judge Rea entered detailed Findings of Fact and Conclusions of Law (the "Findings"), which included a Permanent Injunction that ultimately was incorporated into the Judgment entered on January 28, 2003. (*See* Tashman Decl., Exh. B "Phase II Bench Trial: Findings of Fact and Conclusion of Law.")

Judge Rea found that Ivanova has no ownership rights in the 34 Pictures. He found that Columbia owns all worldwide intellectual property rights in the first 26 Pictures. He also found that, because Ivanova had not established any rights in the 8 Pictures, he could not trigger Columbia's refusal rights. Given these findings, Judge Rea ruled that he need not reach a determination of Columbia's refusal rights in the 8 Pictures. Finally, the Findings included a Permanent Injunction: (1) prohibiting Ivanova from licensing, distributing, or otherwise exploiting or benefitting from any of the 34 Pictures; and (2) requiring Ivanova to turn over to Columbia all physical elements for the 26 Pictures and to turn over to the Court all physical elements for the 8 Pictures.

#### 2. The 2003 Judgment

Nearly six years after the 1997 Action was initiated, on January 28, 2003, the Court entered its 2003 Judgment. (*See* Tashman Decl., Exh. A.) The 2003 Judgment sets forth the Court's award of Declaratory Relief, stating:

---

1. This Court essentially adopts the facts as set forth in Columbia's Motion; Ivanova does not dispute these facts which are supported by the record in the related actions. As such, citations to the record can be found in Columbia's Motion.

2. Throughout the prior 1997 Action, the 34 Pictures were divided into three groups: the "20 Pictures," the "6 Pictures," and the "8 Pictures."

These groups were based on the Pictures' release dates, the films' production company, and the date Columbia acquired its rights in the films. The 20 Pictures and the 6 Pictures are the same as referenced in Ivanova's Complaint. The 8 Pictures encompass the 7 Pictures referenced in Ivanova's Complaint.

Declaratory Relief: This action is primarily one for interpleader and declaratory relief regarding who owns the worldwide intellectual property rights and related rights, in whole or in part, for the 34 Motion Pictures. The Court hereby declares Columbia to be the owner of all right, title and interest in the 26 Motion Pictures. Ivanova holds no ownership interest in the 26 Motion Pictures. Ivanova holds no ownership interest in the 8 Motion Pictures.

(*Id.* at p. 2.) The 2003 Judgment also reiterates the Permanent Injunction.

Ivanova has appealed from the 2003 Judgment, as well as various interlocutory orders. He also sought a stay of the Permanent Injunction from both Judge Rea and the Ninth Circuit. Both Courts have denied this request. Notwithstanding that his motions to stay the Permanent Injunction were denied, Ivanova recently requested the Ninth Circuit to stay Judge Rea's March 31, 2003 Order finding Ivanova in contempt for violating the Injunction.

### 3. The 1993 Action and the 1994 Stipulated Judgment

The 1997 Action was not the first dispute between Columbia and Ivanova. Shortly after Cantinflas' death in 1993, Columbia filed an interpleader action entitled *Columbia Pictures Industries, Inc. v. Natasha Gelman et al.,* Case No. CV 93–4969 WJR (Ex) (the "1993 Action"), which was assigned to Judge Rea. By that lawsuit, Columbia sought an order dividing the past and future "participations" (the royalties) payable to various parties from Columbia's distribution of the 34 Pictures. Ivanova and his cousin Laparade—another party to the action—each argued that he was entitled to receive Cantinflas' share of the participations generated by Columbia's distribution of the Pictures, to the exclusion of the other; Cantinflas' share is described as the "Moreno Interest." Ivanova's claim was based on his status as Cantinflas' executor, son, and sole heir; Laparade's claim was based on a written assignment from Cantinflas, signed weeks before his death.

In 1994, a settlement was concluded, and in accordance with their stipulation, Judge Rea entered a stipulated judgment (the "1994 Stipulated Judgment"). The 1994 Stipulated Judgment governs Columbia's payment of past and future participations. Among other things, that Judgment requires Columbia to pay any participations that might otherwise have been paid to Cantinflas—the Moreno Interest—into an Escrow Account jointly established by Ivanova and Laparade (the "Ivanova/Laparade Escrow Account"). The Ivanova/Laparade Escrow Account, in turn, is to be disbursed either to Ivanova or to Laparade "within thirty days following the presentation to the escrow agent of a final judgment" in the still-pending litigation in Mexico between Ivanova and Laparade (the "Ivanova/Laparade Mexican Litigation"). That litigation concerns the validity of Cantinflas' written inter vivos assignment of any and all of his rights in and to the 34 Pictures to his nephew Laparade. Thus, Ivanova cannot seek the payment of any participations to him until he prevails against Laparade in Mexico. Insofar as Columbia is aware, no judgment finally adjudicating the Ivanova/Laparade Mexican Litigation has been presented to Judge Rea or to the Ivanova/Laparade Escrow Account, much less a judgment declaring that Ivanova has prevailed.

### B. *Analysis*

Columbia seeks an Order sanctioning Ivanova, as well as his counsel of record, Timothy C. Riley, for filing a pleading containing claims and legal theories that are not warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law and containing factual allegations that are without evidentiary support. Specifically, Columbia contends that Ivanova's First, Second and Third Causes of Action are barred in their entirety by the doctrine of res judicata by the 2003 Judgment and the 1994 Stipulated Judgment, as are the portions of the Fourth and Fifth Causes of Action which assert claims for breach of contract and infringement of his

alleged U.S. copyrights.[3] It argues that these claims are barred by res judicata because they are premised upon Ivanova's allegation that he owns the 34 Pictures, that he has the right to distribute those Pictures, and that he has the current right to receive royalties from Columbia's distribution of those Pictures. However, the 2003 Judgment declares that Ivanova owns no rights in the 34 Pictures and that Columbia owns the worldwide intellectual property rights in 26 of those Pictures, and it permanently enjoins Ivanova from licensing, distributing, exploiting or otherwise benefitting from any of the 34 Pictures. In addition, Columbia asserts that the 1994 Stipulated Judgment provides that all monies that might otherwise be due Ivanova from Columbia's distribution of the 34 Pictures be paid instead into an escrow account pending the resolution of ongoing litigation.

### 1. The doctrine of res judicata

■ "The doctrine of res judicata bars 'all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties ... on the same cause of action, if the prior suit concluded in a final judgment on the merits.' " *International Union of Operating Engineers–Employers Constr. Indus. Pension, Welfare & Training Trust Funds v. Karr,* 994 F.2d 1426, 1429 (9th Cir.1993) (citation omitted). Res judicata encompasses two separate bars to relitigation, claim preclusion and issue preclusion. *See Robi v. Five Platters, Inc.,* 838 F.2d 318, 321 (9th Cir.1988). Claim preclusion bars claims that could have been asserted in the prior action, whether or not they were. *See Tahoe–Sierra Preservation Council v. Tahoe Regional Planning Agency,* 322 F.3d 1064, 1078 (9th Cir.2003). The following factors are considered:

(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve the infringement of the same right; and (4)

whether the two suits arise out of the same transactional nucleus of facts.

*International Union,* 994 F.2d at 1429 (citations omitted). Issue preclusion, by contrast, "prevents relitigation of all issues of fact or law that were actually litigated and necessarily decided in a prior proceeding." *Robi,* 838 F.2d at 321.

### 2. The Fourth Cause of Action for infringement of Ivanova's U.S. copyrights in the 7 Pictures is barred by the 2003 Judgment that he owns no rights in those pictures

■ In his Fourth Cause of Action, Ivanova asserts that he "is the U.S. .... copyright holder" of each of 7 Pictures and that Columbia has been distributing the 7 Pictures in violation of the Copyright Act. (*See* Complaint, ¶ 42.) Columbia asserts that this cause of action is barred by the 2003 Judgment, and this Court agrees with Columbia.

Each of the 7 Pictures addressed by Ivanova is one of the "8 Motion Pictures" addressed in the 2003 Judgment. Only the owner of an exclusive right may sue for infringement under the U.S. Copyright Act. 17 U.S.C. § 501(b). Ivanova alleges in his Complaint, as he must, that "[w]ith respect to U.S. Copyright Ownership of the 7 Pictures, [Ivanova] is the sole owner of the U.S. Copyrights;" (*See* Complaint, ¶ 6.) However, this allegation directly contravenes the 2003 Judgment that "Ivanova holds no ownership interest in the 8 Motion Pictures." (Tashman Decl., Exh. A at p. 2.) The Findings entered in the 1997 Action concluded that Ivanova's evidence of ownership "is not credible, authentic evidence sufficient to support a finding that Cantinflas owned three of the 8 Motion Pictures," and that "Ivanova has not offered any evidence supporting his claim that Cantinflas owned the remaining five of the 8 Motion Pictures." (*Id.* Exh. B at p. 13.) As such, this Court finds that Ivanova's present claim that he owns the U.S. rights in the 7 Pictures, and Ivanova's cause of action

---

**3.** Columbia makes clear that this Motion is not directed to Ivanova's claims that Columbia has infringed his Mexican copyrights. The Mexican copyright claims plead by Ivanova, and by Columbia as counterclaims, are unaffected by the present Motion.

for infringement based upon this claimed ownership, is barred by res judicata.

In opposition, Ivanova argues that he "is the U.S. copyright holder" of 7 of the 8 Pictures and, therefore, he may bring a claim for infringement of "his" copyrights in those 7 Pictures. However, the 2003 Judgment declares: "Ivanova holds no ownership interest in the 8 Motion Pictures." (*Id.* Exh. A at p. 2.) The "Findings of Fact" underlying the 2003 Judgment explain the basis for this declaration, and the "Conclusions of Law" further detail the Court's determinations. (*See id.* Exh. B at pp. 13 and 16–17.) Judge Rea further detailed the relief awarded in a separate "Conclusion" section. (*See id.* at pp. 17–18.) The 2003 Judgment and Findings could not be any clearer—Ivanova does not own or have the right to distribute the 8 Pictures.

Ivanova also argues that Judge Rea's determination that he owns no rights is error, citing to a Motion to Stay Portions of the Judgment (the contempt sanctions) that Ivanova filed with the Ninth Circuit. He additionally includes a nearly two-page quote from a declaration that he has submitted to the Ninth Circuit Judicial Council challenging Judge Rea's rulings. He then argues that he will likely win his appeal regarding the 8 Pictures and, as "proof", includes two further lengthy quotes from his own Ninth Circuit briefing. These arguments underscore that Ivanova's present cause of action for U.S. copyright infringement is barred by res judicata. Further, they highlight the fact that they are improper and instead should be presented to the Ninth Circuit and not to this Court.

Finally, Ivanova argues that "U.S. Copyright ownership of the last 8 Pictures was not a trial issue and it was not decided by Judge Rea." In support, he cites Judge Rea's October 26, 2002 ruling that he has not tried any copyright restoration issues under 17 U.S.C. § 104A. However, this Court agrees with Columbia that Ivanova has mischaracterized Judge Rea's statement.

Under 17 U.S.C. § 104A, copyright protection in certain works which fell into the public domain was "restored." If a work is eligible for restoration, the restored copyright "vests initially in the author or initial rightholder of the work," as determined by the law of the "source country" of the work. 17 U.S.C. § 104A. Ivanova argued during the first phase of trial that under Mexican law, the production company which produces a motion picture is the "author" of the work, and Judge Rea agreed. (*See* Tashman Decl., Exh. C at pp. 3 and 12.) While copyright vests "initially" in the author of a work, Ivanova still had the opportunity to show that he acquired any restored copyrights in the 8 Pictures via an assignment from the producers/authors of the films. Following the bench trial, Judge Rea found, inter alia, that Ivanova had no rights in the 8 Pictures, that he had no evidence of any transfer from the producers of five of the 8 Pictures, and that his claimed evidence of transfer for three of the 8 Pictures was not credible. (*See id.* Exh. B at pp. 13, 16–18.) Thus, in sum, Ivanova is barred from asserting that he owns the 8 Pictures by the doctrine of issue preclusion because Judge Rea necessarily decided that Ivanova owns no rights in the 8 Pictures and therefore that adjudication of restoration under Section 104A was not necessary.

### 3. Ivanova's Second and Third Causes of Action for tortious interference with his efforts to license the Pictures are barred by the 2003 Judgment

In his Second Cause of Action, Ivanova alleges that Columbia has tortiously interfered with his contract with Televisa. (*See* Complaint, ¶¶ 35–37.) The Third Cause of Action for Intentional Interference with Prospective Economic Advantage is based upon similar allegations that Ivanova "had a prospective opportunity to earn millions of dollars through its contracts with its Mexican distributor and with Televisa." (*See id.* at ¶¶ 38–40.)

This Court agrees with Columbia that the Second and Third Causes of Action are barred by res judicata because the 2003 Judgment declares that Ivanova owns none of the Pictures that he seeks to license to Televisa—the license with which Columbia has allegedly interfered. Ivanova's interfer-

ence claims are premised upon Pictures he does not own and therefore may not license. In addition, the claims are premised upon Ivanova's ability to distribute, license, or otherwise exploit the Pictures. However, any effort by Ivanova to license the 34 Pictures for distribution in any country or in any medium would be a contempt of the Permanent Injunction contained in the Findings and the 2003 Judgment.[4] So long as the Permanent Injunction remains in effect, Ivanova has no right to exploit or benefit from any of the Pictures, and Columbia therefore cannot "interfere with Ivanova's efforts to distribute or market the 34 Pictures."

Ivanova argues that res judicata does not bar his interference claims because he is the self-proclaimed Mexican copyright owner of the 34 Pictures. However, as Columbia states, this is irrelevant to the present motion. Even if Ivanova was the owner of the Mexican copyrights, a Permanent Injunction presently prohibits him from "licensing, distributing, marketing, offering for distribution or sale, or otherwise exploiting or benefitting from any of the 34 Motion Pictures." Ivanova ignores the Permanent Injunction completely. He also argues that Mexican law should apply to determine his right to distribute, license or otherwise exploit or benefit from the Pictures. However, Columbia points out that this argument is itself barred by res judicata because Ivanova previously made the same argument to Judge Rea, and Judge Rea rejected these arguments. Judge Rea stated:

> Ivanova argues that the Court's decision as to Columbia's ownership interferes with Mexican copyright law. However, this misconstrues the Court's decision which concluded that Ivanova is contractually barred from distributing the films, regardless of their copyright status by virtue of the warranties and transfer of all interests in the films made therein.

(Tashman Decl., Exh. K at Exh. A, p. 7 n. 5.)[5]

In another argument, Ivanova contends that Judge Rea lacked jurisdiction to enter an order affecting his rights as the putative Mexican Copyright holder because his court was not a "court of competent jurisdiction." This argument is also barred by res judicata because Ivanova repeatedly challenged, the Court's personal jurisdiction, subject matter jurisdiction and power to issue preliminary and permanent injunctions with worldwide effect, and Judge Rea heard and rejected each challenge. (*See id.* Exhs. RR, SS at 3–4, and TT at 2.) As the Ninth Circuit has held:

> [T]here is a major exception to that general requirement of jurisdictional competency. Even if a foreign court lacked jurisdiction to pronounce a judgment, a party will be barred from collaterally attacking a judgment entered by that court if the party appeared there, contested jurisdiction, and lost.

*United States ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 250 (9th Cir.1992) (citation omitted).

In sum, the Permanent Injunction is effective until modified or set aside by the Ninth Circuit. At present, Ivanova has no right to license the films to Televisa or any other party, as claimed in the Second and Third Causes of Action. Because Ivanova has no right to license, distribute, exploit or otherwise benefit from the Pictures, he has no rights with which Columbia can interfere.

**4. Ivanova's Fifth Cause of Action for breach of contract based on Columbia's failure to pay him participations is barred by the 2003 Judgment, the Findings in the 1997 Action and the 1994 Stipulated Judgment**

■ In his Fifth Cause of Action, Ivanova alleges, *inter alia,* that Columbia "distributed the 20 Pictures and the 6 Pictures under a purported 1979 distribution contract requiring [Columbia] to pay 35% of the gross proceeds to Cantinflas or his successors or

---

**4.** Indeed, since the Permanent Injunction was entered, Judge Rea twice has found Ivanova in contempt for licensing or attempting to license some of the Pictures.

**5.** Furthermore, by Order entered on April 14, 2003, Judge Rea found Ivanova in contempt of the Injunction for licensing the Pictures for release on DVD in Mexico.

assigns." (*See* Complaint, ¶ 46.) Ivanova alleges that Columbia has breached this contract since "at least December 31, 2000" by distributing the 26 Pictures by paying "nothing to the Cantinflas estate under the purported licenses." (*See id.* at ¶ 47.)

This Court finds that this breach of contract claim is barred both by the 2003 Judgment and the Findings upon which that Judgment is based, as well as the 1994 Stipulated Judgment. The 2003 Judgment declares that Columbia owns these 26 Pictures. This Judgment is based in part on the Court's Findings that Columbia acquired the 20 Pictures in 1960 and the 6 Pictures in 1968. (*See* Tashman Decl. Exh. B at pp. 5–10, 12.) As such, Columbia's right to distribute the 26 Pictures derives from its decades-long ownership of those films, and not from any purported "distribution contract."

Moreover, Ivanova's claim that Columbia breached the alleged "distribution contract" by failing to make payments to him is barred by the 1994 Stipulated Judgment. The 1994 Stipulated Judgment requires that "participations"—which are any monies that Columbia is obligated to pay pursuant to film contracts—be paid to specified claimants and in specified percentages into an escrowed account. Ivanova's allegation that Columbia breached a contractual obligation which requires Columbia to pay participations to him contradicts and contravenes the 1994 Stipulated Judgment: the 1994 Stipulated Judgment acknowledges the ongoing Ivanova/Laparade Mexican litigation and requires that any participations that may be due to Ivanova be paid instead into the Ivanova/Laparade Escrow Account until that lawsuit is resolved. Ivanova has at best only a contingent right to receive participations in the future, in the event he prevails in the Ivanova/Laparade Mexican Litigation. Thus, the claim in the Fifth Cause of Action that Columbia breached a 1979 "distribution contract" by failing to pay monies to him is barred by both the 2003 Judgment and the 1994 Stipulated Judgment.

In his Opposition, Ivanova claims that the 1979 document referenced in the Complaint is a June 8, 1979 contract ("1979 Contract") attached as an exhibit to the Riley Declaration. No contract was attached to the Complaint. As Columbia points out, the first sentence of this 1979 Contract states:

> Columbia Pictures has heretofore acquired ownership of the 20 Cantinflas pictures set forth in Schedule "A: [sic] annexed hereto and made part hereof and the 6 additional pictures set forth in Schedule B annexed hereto and made part hereof."

(Riley Decl., Exh. I.) As such, this 1979 Contract directly contradicts Ivanova's claim that he owns the 26 Pictures. Furthermore, contrary to Ivanova's allegations, the 1979 Contract does not require payment of "35% of the gross proceeds to Cantinflas or his successors/assigns"; rather, it requires payment of 35% of "gross receipts" to a company called Telemont Anstalt. Moreover, under the 1994 Stipulated Judgment, the most Ivanova would ever be entitled to receive is 11.375% of all pre–2001 gross receipts, and 22.75% of all gross receipts thereafter—not 35% as pled in the Complaint. (*See* Tashman Decl., Exh. E at ¶ 3.) In any event, the 1994 Stipulated Judgment presently bars Columbia from making any payments to Ivanova, but instead requires Columbia to make any payments to an escrow account.[6]

In sum, Ivanova may pursue a breach of contract claim only if it is not barred by the 1994 Stipulated Judgment. Ivanova's contract claim does not even mention the 1994 Stipulated Judgment, much less claim a breach of its terms. Instead, the Complaint claims that Columbia breached a distribution license, which is not attached to the Complaint, by failing to pay him, when payments to Ivanova would unquestionably violate the 1994 Stipulated Judgment. Therefore, the breach of contract claim is barred by the 1994 Stipulated Judgment under the doctrine of res judicata.

---

6. Ivanova also argues that he has prevailed in Mexico in litigation against his cousin, Laparade, and that decision was "final." As Columbia points out, Ivanova relies upon a May 1999 tentative decision of the district court, and this tentative decision was not adopted but instead was vacated and superceded by a July 13, 1999 Order, which expressly rejected the findings which Ivanova cites. (*See* Tashman Decl., Exh. U.)

**5. Ivanova's First Cause of Action for unfair competition based on Columbia's interference with his efforts to distribute the Pictures and Columbia's failure to pay him participations is barred by the 2003 Judgment and the 1994 Stipulated Judgment**

■ In his First Cause of Action, Ivanova alleges that Columbia violated California's Business and Professions Code § 17200 by distributing the 34 Pictures, interfering with Ivanova's contract with Televisa, and "suddenly halting the payments related to the 20 and the 6 Pictures." (*See* Complaint, ¶¶ 33–34.)

This Court finds that this cause of action is also barred by res judicata. The Article III standing requirement limits this Court's ability to hear claims pled under Section 17200, which does not require standing, even though the claim might be permitted in a state court. *See Lee v. American Nat. Ins. Co.,* 260 F.3d 997, 1001 (9th Cir.2001) ("Article III of the Constitution, however, limits the jurisdiction of the federal courts to 'cases and controversies,' a restriction that has been held to require a plaintiff to show, inter alia, that he has actually been injured by the defendant's challenged conduct"). In *Lee,* the Ninth Circuit dismissed the plaintiff's Section 17200 claim because he did not suffer injury due to the defendant's conduct. *See id.*

Here, Ivanova has suffered no harm from any of the alleged conduct. The 2003 Judgment declares that he does not own the 34 Pictures and permanently enjoins him from licensing, distributing, or otherwise exploiting or benefitting from those Pictures. He therefore can suffer no cognizable harm even if Columbia is distributing the films. By the same token, because he has no right to distribute the 34 Pictures, he can suffer no cognizable harm even if Columbia has "interfered" with his "ability" to distribute the films. Additionally, Ivanova claims that Columbia stopped paying participations to him in March 2001 "for the specific purpose ... to commence illegal financial starvation of [Ivanova] unless [Ivanova] settled the lawsuit between [Columbia] and [Ivanova] involving claims to the Cantinflas films at issue." (*See* Complaint, ¶ 25.) However, the 1994 Stipulated Judgment requires Columbia to deposit any participation payment that might be due to Ivanova into the Ivanova/Laparade Escrow Account, pending resolution of the Ivanova/Laparade Mexican Litigation. In sum, under the facts as determined by res judicata, Ivanova cannot allege any cognizable injury, and as a matter of law, this Court cannot hear this Section 17200 claim.

In his Opposition, Ivanova again relies on the 1979 Contract between Columbia and Telemont to argue that Columbia "halt[ed] the payments related to the 20 Pictures and the 6 Pictures under the alleged license agreement." However, as discussed above, this 1979 Contract affirms that Columbia owns the 26 Pictures and requires payment of participations to *Telemont.* Further, while Ivanova concedes that any payments, if required, must be paid to the Laparade/Ivanova Escrow Account, he argues nonetheless that because he *may* be entitled to receive the funds in the future, the claim may be brought now. However, a claim of future, contingent harm does not confer standing. *See Scott v. Pasadena Unified School District,* 306 F.3d 646, 662 (9th Cir.2002)(federal courts will not consider a claim to be "ripe for judicial resolution if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all"). Thus, it remains that Ivanova lacks standing to assert his First Cause of Action because he cannot be injured by Columbia's alleged unfair conduct.

**6. Rule 11 sanctions are warranted**

■ Rule 11 provides in pertinent part:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

. . .

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal

of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed.R.Civ.P. 11(b). Courts have found that filing a complaint that includes factual or legal contentions that are barred by a prior judgment violates Rule 11. *See, e.g., King v. Hoover Group, Inc.*, 958 F.2d 219, 223 (8th Cir.1992); *Southern Leasing Prtnrs., Inc. v. McMullan*, 801 F.2d 783, 788–89 (5th Cir. 1986); *Cannon v. Loyola Univ. of Chicago*, 784 F.2d 777, 782 (7th Cir.1986).

Rule 11 provides that the court may "impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." It further provides that:

A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Fed.R.Civ.P. 11(c)(2).[7]

### a. Striking of the offending portions of the Complaint is warranted

Columbia asks this Court to strike Ivanova's barred claims as a sanction for asserting

those claims. This Court finds that this is an appropriate request under Rule 11, as Rule 11 provides that a court may impose "directives of a nonmonetary nature" as a sanction for its violation.[8] As such, this Court strikes all alleged facts and references in Ivanova's Complaint which are contrary to known facts or otherwise barred by the 1994 Stipulated Judgment and the 2003 Judgment. Specifically, this Court strikes:

1. Ivanova's First, Second and Third Causes of Action (and all factual allegations upon which those claims are based), the portions of the Fourth Cause of Action which allege United States copyright infringement (and all factual allegations upon which that claim is based), and the portions of Ivanova's Fifth Cause of Action which assert Columbia's breach of a "distribution agreement" by failing to pay Ivanova participations (and all factual allegations upon which that claim is based);

2. portions of Ivanova's introductory paragraph referring to the stricken claims;

3. all allegations set forth in paragraphs 2–3, 6, 11–12, 15–18, 21–28 and 30–32 of the Complaint which are inconsistent with, or contrary to the known facts, the 1994 Stipulated Judgment and the 2003 Judgment; and

4. all relief requested in the Prayer at paragraphs 1(a), 2, 4(a), 4(b), 5–6 and 8 which are inconsistent with, or contrary to the known facts, the 1994 Stipulated Judgment and the 2003 Judgment.[9]

Ivanova contends that rather than striking his Fourth Cause of Action for copyright infringement, the Court should stay that claim pending his appeal. He argues that if

---

7. Monetary sanctions may not be awarded against a party for a violation of Rule 11(b)(2) (regarding legal claims), but only against counsel. Fed. Rule. Civ. P. 11(c)(2)(A).

8. In addition, Federal Rule of Civil Procedure 12(f) provides that "upon the court's own initiative at any time, the court may order stricken from any pleading any … immaterial, impertinent, or scandalous matter." Because claims

and theories barred by res judicata are immaterial and impertinent, such allegations may be stricken by the Court sua sponte.

9. Therefore, Ivanova's sole surviving claims are the portions of his Fourth and Fifth Causes of Action asserting infringement of his Mexican copyrights by Columbia's alleged distribution of 33 of the 34 Pictures in Mexico.

he ultimately prevails on appeal, his claims may be barred by the statute of limitations, and that because the 2003 Judgment is not "final" pending appeal, res judicata does not apply. Ivanova's arguments have no merit.

■ The statute of limitations on a claim cannot commence to run until all elements of a cause of action are present. *See Heck v. Humphrey*, 512 U.S. 477, 489–90, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Here, Ivanova does not have a U.S. copyright infringement claim because Judge Rea ruled that Ivanova has no "ownership rights" in any of the 34 Pictures. As such, Ivanova need not be concerned about the statute of limitations because it cannot start running until all the elements of his infringement claim are present. Therefore, a stay is not required to toll the statute.

■ With respect to Ivanova's argument that the 2003 Judgment is not final pending appeal, Ivanova is incorrect. Federal judgments are effective upon entry, irrespective of a pending appeal. *See Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 n. 11 (9th Cir. 1992); *Robi*, 838 F.2d at 327. As such, res judicata applies to federal judgments notwithstanding a pending appeal. *See id.* For this reason, a stay pending appeal is improper. Furthermore, a stay pending appeal would be improper because Ivanova's claims would ripen only upon the Ninth Circuit's reversal of the 2003 Judgment; therefore, the requisite "case and controversy" does not currently exist. *See Scott*, 306 F.3d at 662.

As a result, this Court lacks jurisdiction to hear, or stay, these claims.[10]

### b. Sanctioning Ivanova's counsel is warranted

■ Columbia further requests that Ivanova's counsel be sanctioned by a fine of no less than $5,000 and ordered to pay Columbia's costs and attorneys' fees in bringing this motion. This Court finds that a fine and payment of Columbia's costs and attorneys' fees in bringing this motion are warranted. The record reflects that Judge Rea told Ivanova at least twice that, if dissatisfied with the Permanent Injunction, the Findings, or the 2003 Judgment, his sole recourse is appeal. (*See* Tashman Decl., Exh. L, March 31, 2003 Order, at Exh. A, p. 3 ("Ivanova's only legitimate recourse is through the appeals process"); *id.* at Exh. J, September 10, 2002 Order, at Exh. A, pp. 11–12 ("Ivanova's only way to seek relief from the [Permanent Injunction] is through appeal").) Further, fifteen days after entry of the 2003 Judgment, Ivanova filed the instant Complaint. Ivanova's counsel admitted that the purpose of the present action is to "moot" the 2003 Judgment by asserting claims based upon issues that already have been conclusively determined: "We think Judge Tevrizian will have the intelligence and the guts to render 90% of the appeal moot." (*See* Tashman Decl., Exh. X, Riley March 28, 2003 letter, at 2.) Filing a new action to have a District Court render an ongoing appeal of another District Court case "moot" is patently improper.[11]

10. Moreover, regardless of the current vitality of the declaratory relief contained in the 2003 Judgment, the injunctive relief in that Judgment bars Ivanova from obtaining the relief he seeks via the allegations and claims now at issue, and the Ninth Circuit has refused to stay the Permanent Injunction.

11. This Court is also aware of the record in the 1997 Action wherein Counsel has routinely violated Court Rules and Orders before Judge Rea. (*See* Tashman Decl., Exh. L at Exh. A p. 6; *id.* Exh. J at Exh. A p. 9 n. 9 ("It is worth noting that, even in this latest barrage of briefing, Ivanova has seen fit to disregard numerous Local Rules."); *id.* Exh. N at 3 n. 1 ("Amazingly, . . . Ivanova engages in a nine-page tirade seeking to re-argue the merits of Columbia's contempt motions and accusing Columbia, and, more incredibly, [Judge Rea], of various unsubstantiated impro-

prieties.").) As mentioned herein, Judge Rea recently found Ivanova in contempt because he licensed at least two of the Pictures for distribution on DVD. Ivanova defended his actions by arguing that Judge Rea presided over a "kangaroo court," conducting a " 'Simple Simon' trial," and acting as "an agent of [Columbia]—its black-robed 'thug' in this case." (*Id.* Exh. M at pp. 10, 12, and 13.) Judge Rea fined Ivanova's counsel, Mr. Riley, $1500, stating, among other things, that "[t]he number of violations that have been committed during the course of this litigation are too numerous to state here." (*Id.* Exh. L at Exh. A, p. 6.) In addition, Ivanova has not complied with the nondistribution and turnover order. He has been ordered to pay sanctions to the Court in an initial amount of $10 per film per day, with that amount to increase by $10 per film per week, to be deposited weekly. (Tashman Decl., Exh. YY at Exh. 1 p. 6.) Judge Rea has set a

This Court may impose such sanctions as are "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated". Here, it is clear that had Ivanova's Counsel undertaken a reasonable inquiry of the applicable law, he should have determined that Ivanova's claims were clearly barred by the doctrine of res judicata and that an appeal was pending. Unfortunately, sanctions are necessary to deter counsel from wasting resources of the Court. Thus, this Court sanctions Ivanova's counsel, Timothy C. Riley, $2,500 payable to the Court and further orders Mr. Riley to pay Columbia's reasonable costs and attorney's fees incurred in connection with this Motion. Indeed, "[t]he doctrine of res judicata is meant to protect parties against being harassed by repetitive actions." *Tahoe–Sierra*, 322 F.3d at 1077 (citation omitted). Because Columbia did not submit an accounting of such reasonable costs and attorney's fees, this Court will determine this amount upon further briefing by Columbia. Columbia is ordered to submit a brief and supporting documents detailing the costs and attorney's fees incurred, including the hourly rates, along with a Proposed Order. This Court will then take the matter under submission and issue its ruling thereafter.

### III. *Conclusion*

Accordingly, this Court **grants** Defendant Columbia Pictures Industries, Inc.'s Motion for Rule 11 Sanctions Against Plaintiffs Mario Moreno Ivanova, the Estate of Mario Moreno Reyes and Their Counsel Timothy C. Riley as set forth herein.

IT IS SO ORDERED.

further show cause hearing for June 23, 2003, to evaluate whether further sanctions (i.e., imprisonment) may be appropriate to compel Ivanova's compliance. (*See id.*) By the time of the show cause hearing, Columbia states that Ivanova will owe the Court more than $185,000 in contempt sanctions.