**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No. NV-15-1096-JuKiD |
| ) | |
| 3.78 IRISH ACRES, LLC, ) | Bk. No.  15-10410-ABL |
| ) | |
| Debtor. ) | |
| _____) | |
| 3.78 IRISH ACRES, LLC, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[*] |
| ) | |
| INLAND EMPIRE SERVICING ) | |
| COMPANY; YVETTE WEINSTEIN, ) | |
| Chapter 7 Trustee; SWEENEY ) | |
| GOURMET COFFEE, INC.; MARA ) | |
| ENTERPRISES; FIRST AMERICAN ) | |
| TITLE INSURANCE COMPANY; JAMES) | |
| VAHEY, Trustee; KOLSAR & ) | |
| LEATHAM, ) | |
| ) | |
| Appellees. ) | |
| _____) | |

Argued and Submitted on February 18, 2016
at Las Vegas, Nevada

Filed - February 25, 2016

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable August B. Landis, Bankruptcy Judge, Presiding
_____

Appearances:     Steven J. Mack of Black & Lobello argued for
appellant 3.78 Irish Acres, LLC; Gary C. Milne of
Gerrard Cox & Larsen argued for appellee Inland
Empire Service Company.

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

-1-

Before:  JURY, KIRSCHER, and DUNN, Bankruptcy Judges.

James W. Vahey (Vahey), as the sole trustee of the James W. Vahey Revocable Family Trust (Vahey Trust), filed a chapter 7[1] case on behalf of 3.78 Irish Acres, LLC (Irish Acres) shortly after the bankruptcy court dismissed the first case that he filed on behalf of Irish Acres.  Appellee, Inland Empire Service Corporation (Inland), filed a motion to dismiss (MTD), asserting that the Vahey Trust was precluded from filing the second petition based on findings made by the bankruptcy court in connection with its dismissal order in the first case.

In the first case, at issue was whether Vahey had authority to file the bankruptcy case as a member or manager of Irish Acres, or as the sole trustee of the Vahey Trust, which was a member.  Although Vahey made an offer of proof at a hearing on a MTD in the first case that the Vahey Trust was a majority member of Irish Acres with authority to file the bankruptcy petition, the court denied his request to file a sur-reply and offer evidence regarding that interest.  In its later oral ruling, the bankruptcy court found that, based on the record before it, the Vahey Trust held a 50% membership interest in Irish Acres.  Therefore, because the Vahey Trust was not a majority member, under Nevada limited liability law it did not have the authority to file the bankruptcy petition without the consent of all the

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

members. Vahey did not appeal that ruling and the dismissal order became final.

In the second case, the bankruptcy court held that the Vahey Trust was precluded from filing the case under the doctrines of claim and issue preclusion and also found that the case was filed in bad faith. The court entered an order dismissing the case and this appeal followed. For the reasons discussed below, we AFFIRM.

## I.  FACTS

### A.  Prepetition Events

Vahey, a medical doctor, associated with Mary Musso (Musso) in making his real estate investments. According to Vahey, under the investment plan, Musso identified parcels of vacant or improved land, identified buyers, and then purchased the land to resell it to the identified buyers at a premium over the purchase price. Under this arrangement, Musso and Vahey were required to put up money to purchase the properties and then split the profits on the projects evenly. Vahey declared that he advanced funds to Musso of approximately $1,200,000 since September 2007. Vahey described himself as a "passive" investor with Musso taking care of the business, closings, and reviewing deeds of trust. One of the parcels involved in the investment plan was the 3.78 acre parcel of vacant land which was purchased by Irish Acres.

#### 1.  Organization of Irish Acres

Musso formed Irish Acres as a limited liability company for the purpose of purchasing the 3.78 acre parcel of vacant land. On July 20, 2009, Irish Acres filed its Articles of Organization

-3-

with the Nevada Secretary of State. On the same day, Irish Acres' Initial List of Manager or Managing Members and Registered Agent was also filed with the Secretary of State, naming Vahey and Mace J. Yampolsky[2] as Managers.

An operating agreement (OA) governs Irish Acres. The agreement was executed by Vahey on behalf of the Vahey Trust and by Musso on behalf of Sweeney's Gourmet Coffee (Sweeney's),[3] the two Members of Irish Acres as identified in OA § 2.3. Vahey and Yampolsky were identified as Managers in OA § 5.2.

Other relevant sections of the OA include:

**3. Capital**

3.1 Initial Capital Contributions. The initial capital contribution of the Member will be made by the Member transferring to the Company the assets or cash described on the attached Exhibit A.

3.2 Additional Contributions. Except as otherwise provided in the Act, the Member is not required to contribute additional capital to the Company. But the Member may make additional contributions to the company from time to time as the Member wishes.

**5. Administration of Company Business**

5.5 Authority. . . [E]ach Manager is an agent of the Company and has authority to bind the Company in the ordinary course of the Company's business. In addition, the Manager has authority to engage in any of the following acts.

5.5.1 To sell, lease, exchange, mortgage, pledge or otherwise transfer or dispose of all or substantially of the property or assets of the Company.

5.7 Powers of Members. The Member, in his capacity

---

[2] Yampolsky was evidently the attorney who assisted Musso in forming Irish Acres.

[3] Sweeney's was an active corporation at the time of Irish Acres' formation. Musso was its sole owner.

-4-

as a member of the Company, is authorized to act on behalf of the Company.

## 7.   Dissolution and Winding up

7.1 The Company will dissolve on the earlier of the following events:  (a) approval of dissolution by the Member or (b) such time as the Company has no members. Neither the dissolution nor bankruptcy of the Member nor the assignment of the Member's entire membership interest will dissolve the Company.

7.2 Following the dissolution of the Company, the affairs of the Company must be wound up by the Managers.  If the affairs of the Company are to be wound up, a full account must be taken of the assets and liabilities of the Company, and the assets of the Company must then be promptly liquidated.  The proceeds must first be paid to creditors of the Company in satisfaction of all liabilities and obligations of the Company, including, to the extent permitted by law, liabilities and obligations owed to the Member as a creditor.  Any remaining proceeds may then be distributed to the Member.  Property of the Company may be distributed in kind in the process of winding up and liquidation with the consent of the Member.

Exhibit A to the OA shows that each of the two members, the Vahey Trust and Sweeney's, received a 50% membership interest in Irish Acres in exchange for their capital contributions.  It also reflected that the purchase price for the 3.78 acre vacant parcel was $4,950,000, and showed that money deposits Vahey had made for other investment properties in the amount of $1,200,000 were transferred to the escrow through which Irish Acres purchased the property.

## 2.   Deed of Trust Given to Sweeney's

Yampolsky, acting in his capacity as a manager of Irish Acres, executed a note (Note) secured by a deed of trust against the 3.78 acre parcel, dated September 8, 2009, in the amount of $550,000 in favor of Sweeney's (Note).  His signature on the short form deed of trust and assignment of rents (Deed of Trust)

-5-

was notarized on October 6, 2009.[4]

Over a year later, Yampolsky resigned as a manager of Irish Acres by executing a Certificate of Resignation of Officer, Director, Manager, Member, General Partner, Trustee or Subscriber, filed on October 15, 2010 with the Nevada Secretary of State. Vahey was then the only manager of Irish Acres.

**3. 2011 Lawsuit**

On October 28, 2011, Vahey and Other Hand, LLC[5] filed a lawsuit in the Nevada state court (Case No. A-11-657496-C) against various defendants, including Musso and Yampolsky, alleging 19 causes of action (2011 Lawsuit). It appears that the lawsuit related to alleged fraud committed by the defendants in connection with Vahey's real estate investments, including Irish Acres.

By reason of the 2011 Lawsuit and other litigation involving Musso and/or her entities, Musso and Sweeney's agreed to reimburse First American Title Insurance Company (First American) for attorneys' fees and costs which it had incurred due to the litigation. To satisfy some of this debt, Sweeney's assigned the Note and Deed of Trust executed by Yampolsky as manager for Irish Acres to First American. This assignment was recorded on February 26, 2014. Subsequently, the Deed of Trust was assigned to Inland. This assignment was recorded on March 28, 2014.

---

[4] The record indicates that Vahey questioned the validity of this Note and Deed of Trust.

[5] The record does not show the relationship, if any, between Vahey and Other Hand, LLC.

-6-

### 4.  Trustee's Sale

On May 13, 2014, Gerrard Cox Larsen, acting as Substituted Trustee under the Deed of Trust, sent a letter to Irish Acres, c/o James Vahey, M.D., notifying him of Irish Acres' default under the terms of the Note and Deed of Trust.  The letter was followed by a Notice of Default and Election to Sell that was recorded on May 20, 2014, and Notice of Trustee's Sale recorded on October 1, 2014.  The trustee's sale was set for October 23, 2014.  Vahey filed a motion for temporary restraining order and preliminary injunction in the Nevada state court, seeking to stop the sale.  The state court denied the motion.  At the hearing on this matter, the Panel was informed that a foreclosure sale had taken place.

### 5.  Appointment of Receiver of Sweeney's

In a separate lawsuit initiated by First American against Sweeney's in the Nevada state court, First American moved for the appointment of a receiver.  The state court granted the motion, finding that First American met the statutory requirements for the appointment of a receiver and that, as a judgment creditor of Sweeney's, was entitled to protect its interest in Sweeney's sole asset, Irish Acres.

## B.  Bankruptcy Events

### 1.  The First Case

On October 24, 2014, Vahey filed a voluntary chapter 7 bankruptcy petition on behalf of Irish Acres (First Case) after the state court injunction was denied and to stop the foreclosure sale, based upon his authority as the manager of the

company.[6] The corporate ownership statement filed on October 24, 2014, by Irish Acres with its voluntary petition identifies Sweeney's as owning 10% or more of Irish Acres, but an amended voluntary petition filed on November 8, 2014, included a corporate ownership statement that omitted Sweeney's interest. Therefore, Vahey represented that Sweeney's membership interest was less than 10% despite Exhibit A to the OA which showed that Sweeney's held a 50% membership interest in Irish Acres.

On December 2, 2014, Inland filed the MTD challenging Vahey's authority to commence Irish Acres' bankruptcy as a manager. Inland argued that under OA § 7.1 and Nevada Revised Statutes (NRS) 86.491 Vahey was not authorized to unilaterally dissolve Irish Acres by filing a bankruptcy petition. That statute, which pertains to the dissolution and winding up of affairs of a limited liability company, states in relevant part:

> 1. A limited-liability company must be dissolved and its affairs wound up:
>
>> (c) Unless otherwise provided in the articles of organization or operating agreement, upon the affirmative vote or written agreement of all the members[.]

Inland further maintained that under OA § 5.5, as a manager, Vahey only had authority to bind the company in the ordinary course of the company's business and the filing of the

---

[6] In the schedules, Vahey listed the raw land owned by Irish Acres with a value of $1,520,000 and listed creditors, including Inland, with secured claims against the property with $0.00 value. The Statement of Financial Affairs showed that Irish Acres had no income and Schedule F listed Vahey as having an unsecured claim which was unliquidated in connection with a pending state court action.

-8-

bankruptcy case was not in the ordinary course of business. Therefore, since Vahey did not have the affirmative vote of all the members to dissolve and wind up the affairs of Irish Acres and, as manager, was not authorized to file the petition on behalf of Irish Acres, dismissal was proper.

Vahey opposed, arguing that under the OA he had authority to file the bankruptcy case on behalf of Irish Acres in at least three ways: as a member, as a manager, and as the sole trustee of the Vahey Trust. Relying on OA § 5.7 which states, "The Member, in his capacity as a member of the Company, is authorized to act on behalf of the Company," Vahey asserted that as an individual holding a membership interest in Irish Acres, he was authorized to act on its behalf without any restriction. Since the use of the word "member" in this section was used in the singular, Vahey argued that it should be construed as being singular, citing TIG Specialty Insurance Co. v. Pinkmonkey.com Inc., 373 F.3d 365, 375 (5th Cir. 2004). Vahey also asserted that while "Inland disputes that Dr. Vahey is a Member of the [Irish Acres], substantial evidence exists to the contrary. Specifically, Dr. Vahey had contributed over $1.2 million dollars into [Irish Acres'] business."[7]

Next, because Vahey was designated as a manager of Irish Acres under the OA, he maintained that he was authorized to bind the company with respect to matters outside the ordinary course of business as demonstrated by OA § 5.5.1. That section gave

---

[7] Recall that § 2.3 of the Operating Agreement clearly stated that the Vahey Trust was a member and not Vahey in his individual capacity.

managers authority to engage in any of the following: "To sell, lease, exchange, mortgage, pledge or otherwise transfer or dispose of all or substantially all of the property or assets of the Company." Moreover, contrary to Inland's assertion, Vahey argued that OA § 7.1 regarding the dissolution and winding up of Irish Acres' business was not applicable.

Finally, Vahey argued that the Vahey Trust had authority to institute the bankruptcy case as a member and reiterated his position that OA § 5.7 evidenced an intent to vest powers in each member individually. "In other words, rather than unanimous consent under NRS 86.491(1)(c) (which related to dissolution and winding-up), the [OA] vested authority in each member to authorize bankruptcy filings rather than require unanimous consent." Therefore, Vahey suggested that he could amend the bankruptcy petition to conform to his authority by signing it in his capacity as the sole trustee of the Vahey Trust, an undisputed member.

In reply, Inland argued that Nevada law placed the management of all actions of a limited liability company in the hands of its members in proportion to their contribution to its capital under NRS 86.291. NRS 86.291 provides in relevant part:

> 1. Except as otherwise provided in this section or in the articles of organization or operating agreement, management of a limited-liability company is vested in its members in proportion to their contribution to its capital, as adjusted from time to time to reflect properly any additional contributions or withdrawals by the members.

Relying on NRS 86.291, Inland argued that since the Vahey Trust and Sweeney's each owned 50% of Irish Acres, the actions of Irish Acres must be approved by each of the members. Inland

-10-

maintained that any authority not specifically provided to the manager in the OA remained in the hands of the members under NRS 86.291.

Inland acknowledged that the OA was ambiguous by the interchangeable use of the terms "member" and "members," but asserted that although the agreement used the term "member," this did not mean that only one member's consent was required to take an action. Rather, Inland opined that "it was clear" that both terms "member" and "members" referred to "all members of the Company" because OA § 2.3 identified two members, the Vahey Trust and Sweeney's. Inland pointed out other provisions in the OA which confirmed a plural "members" construction and interpretation:

> 1.6 Title to Assets . . . The Members[8] do not have any
> right to the assets of the Company;
>
> 4.1 Profits and Losses. The entire net profit or net
> loss of the company for each fiscal year will be
> allocated to the Members . . . .;
>
> 4.2 Distributions. Distributions shall be give to
> members . . . . ;
>
> 5.3 Election and Term. The Members must elect a
> successor Manager . . . .;
>
> 5.4 Resignation and Removal. A Manager may resign at
> any time by delivering a written resignation to the
> Members.

In conclusion, Inland argued that the ambiguity caused by the interchangeable use of the terms "member" and "members" simply meant that there was no specific grant of authority in the OA to

---

[8] Sometimes the words member or members is capitalized and other times it is not.

file a bankruptcy.

On January 7, 2015, the bankruptcy court heard oral argument. Inland repeated its arguments that under the OA there was no clear authorization for a single member or the manager to place Irish Acres in bankruptcy. Rather, the authority would have to be granted by all the members of the LLC prior to the commencement of the case under NRS 86.291. Vahey argued that the OA was clear in its distinctions between a member or members and that under OA § 5.7, the Vahey Trust, in its capacity as a member of the company, was authorized to act on behalf of the company without restrictions. He further argued that under NRS 86.291, management power was vested in proportion to membership interests. At that point, the bankruptcy court inquired as to what level of interest the Vahey Trust actually had in Irish Acres. Vahey's counsel responded that he believed it was over 99%. He then explained that the membership interests had changed over a year ago:

> They keep citing 50/50, but the documents -- I didn't think that was really relevant to this particular issue, if you look at the [OA] under [§] 5.7 where it says 'a member.' It's very specific that a member may take any action, so we didn't really believe that the percentage would be relevant, but we can get that to your court. That was actually brought up for the first time in the reply, Your Honor. If you need a sur-reply or need additional information, we can provide the exact percentage of ownership.

The court responded: "I have a different way I'll go at it, but I appreciate the information, counsel."

Later in the hearing, Inland argued that there was no evidence before the court that showed Irish Acres was owned other than 50/50 by the Vahey Trust and Sweeney's. Inland

-12-

further asserted: (1) Sweeney's had never given up any of its interest and (2) there was no authority under the OA to take away a membership interest or to dilute a membership interest. The bankruptcy court took the matter under submission.[9]

On January 26, 2015, the bankruptcy court announced its oral ruling. The court first found that Vahey lacked the authority to file the case as "the manager" of Irish Acres. The court found that under OA § 5.5.1, as a manager, Vahey only had the authority to bind the company in the ordinary course of its business and filing a bankruptcy petition was outside the ordinary course of business. In re Avalon Hotel Partners, LLC, 302 B.R. 377, 380 (Bankr. Or. 2003) (the filing of a chapter 11 petition by an LLC's manager, without member approval, was not authorized by Oregon law or the LLC's Operating Agreement as "[a] decision to file for bankruptcy protection is a decision outside the ordinary course of business, even for an entity in dissolution."). The bankruptcy court further found that no authority for filing the petition existed under the provisions of OA §§ 7.1 and 7.2 relating to the dissolution or winding up of the company.

Next, the court found that Vahey did not have the authority to file the bankruptcy case as an individual member and without the full approval of all the members despite the ambiguity of the OA. In this regard, the bankruptcy court noted that Vahey

_____

[9] The court made clear that the only thing that would happen at the later hearing is that the court would issue an oral ruling and that there would not be any additional evidence or discussion between the court and the parties other than appearances.

-13-

did not sign any of the papers authorizing the bankruptcy filing in his capacity as a member. The court further found that Exhibit A to the OA identified not one, but two members that had made equal capital contributions and thus Sweeney's and the Vahey Trust each owned 50% as stated in Exhibit A. Therefore, the court specifically made a factual finding regarding the 50/50 membership interests of the two members "based on the record" before it.

In addition, the bankruptcy court found that Vahey's citation to OA § 5.7 to suggest that either member had the unilateral power to file a bankruptcy case was "inconsistent with logic" since one member could exercise that power and the other one would have the same power to immediately dismiss the case.

Finally, since there was no specific grant of authority under the OA for a member or manager to place Irish Acres in bankruptcy, the court applied the statutory default rule in NRS 86.291, which required that both members of Irish Acres, having 50/50 interests, would have to approve any action of the company outside the ordinary course of business, including the filing of the bankruptcy case.

The bankruptcy court denied Vahey's request to file an amended corporate resolution substituting the Vahey Trust as authorizing the petition. The court found that the proposed amendment would be futile because modifying the terms of the resolution would not change the underlying facts; i.e., Vahey, as the sole trustee of the Vahey Trust, would still not have the authority as a manager or member to commence the bankruptcy case

-14-

on behalf of Irish Acres for the reasons stated.

The bankruptcy court entered the order dismissing Irish Acres' case on January 27, 2015. Vahey did not request reconsideration or seek to amend the bankruptcy court's findings of fact or conclusions of law nor did he file an appeal from that ruling. The dismissal order in the First Case is a final order.

### 2. The Second Case

Two days later, on January 29, 2015, Vahey filed a second petition for Irish Acres. The petition indicated that Irish Acres had not filed a bankruptcy petition within the past eight years, which was not accurate.[10] This time, the Resolution of Members Authorizing Bankruptcy Filing 3.78 Irish Acres, LLC, stated that Vahey and the Vahey Trust "are the majority members" of 3.78 Irish Acres and thus, under NRS 86.291, their majority interest authorized them to commence the bankruptcy case on behalf of Irish Acres. The Corporate Ownership Statement accompanying the petition stated that no entity directly or indirectly owned 10% or more of the equity.[11]

Shortly after, Inland filed its MTD the second case and request for sanctions. Inland argued that the doctrines of claim preclusion and issue preclusion applied for purposes of dismissal and that all elements for each doctrine had been met.

---

[10] The record does not make clear the reason Vahey failed to disclose the prior case.

[11] Since the case was assigned to another judge, Inland filed a notice of related case and request for reassignment of the case to Judge Landis pursuant to Local Bankruptcy Rule 1015. The case was then reassigned to Judge Landis.

Inland further asserted that sanctions were appropriate pursuant to the bankruptcy court's inherent powers or under § 105(a) and it requested sanctions in the amount of $5,000. Inland moved for an order shortening time on the MTD, which Vahey and the appointed chapter 7 trustee opposed. The bankruptcy court granted the shortened time motion.

In opposition to the MTD, Vahey argued that the bankruptcy court ruled that he lacked authority as a manager of Irish Acres to file the bankruptcy petition and nothing more. Although Vahey acknowledged that the bankruptcy court had found that the two members of Irish Acres were Sweeney's and the Vahey Trust, each holding a 50% membership interest based upon Exhibit A to the OA, he argued that the court did not have the benefit of the minutes of a meeting conducted in 2013 which changed the ownership interests. According to Vahey, the notice of the meeting was mailed out on June 28, 2013, approximately 90 days prior to the scheduled meeting to be held on September 27, 2013,[12] and Sweeney's did not attend. Vahey maintained that, as the minutes of that meeting reflected, OA § 2.2 authorized him, as the sole manager of Irish Acres, to approve and provide for the issuance of additional fractional units to the Vahey Trust, as a result of additional monies provided to Irish Acres for the payment of various expenses. According to the minutes, twenty-six additional ownership units were issued to the Vahey Trust at the meeting for the payment of $2,560 to the Nevada Secretary of

---

[12] Vahey's opposition erroneously referred to the meeting as taking place on January 27, 2013, which would have been before the notice of the meeting was sent out.

-16-

State to maintain Irish Acres' valid status.

Vahey further argued that the bankruptcy court in its previous ruling found that the OA was ambiguous as to whether a single member alone could file a bankruptcy case and further found that holders of a majority interest in a limited liability company had authority to file a bankruptcy under NRS 86.291. Thus, Vahey asserted that the authorization to file the second petition was "clearly distinguishable" from the prior case "based upon the court's own ruling." That is, the Vahey Trust as owner of 96.3% of Irish Acres had the authority to file the bankruptcy petition on its behalf.

Attached to the opposition was the declaration of Vahey attesting to these facts, a copy of the Notice of Meeting of Managers and Members, and the minutes of that meeting where Vahey, as the sole trustee of the Vahey Trust, was the only member in attendance and whereby he changed the ownership percentages such that the Vahey Trust owned twenty-six units (96.3%) and Sweeney's owned one unit (3.7%]. Also attached was a copy of an invoice showing that $2,560 had been paid to the Nevada Secretary of State on September 26, 2013.

In reply, Inland argued, among other things, that the Vahey Trust had no authority to dilute Sweeney's membership under the OA or Nevada law.

On March 12, 2015, the bankruptcy court heard and ruled on the MTD. The court found that in the context of the first MTD, it decided that Vahey as an individual or as sole trustee of the Vahey Trust did not have the authority to file the bankruptcy case as a manager nor did the Vahey Trust have the authority to

file it as a single member. The court further found that the issue regarding the Vahey's Trust authority to file the bankruptcy case as a single member was "in no way . . . an issue that was raised only in the reply" (as argued by Vahey). The court found that this issue was squarely before the court and the parties and was argued. "And to the extent there was information that could have had some bearing on that question, it was not presented by way of evidence in the record before the Court in connection with the dismissal order entered in the first case."

The court noted that the evidence should have been presented in the First Case and there was no request to either enlarge or amend the findings of fact or conclusions of law that resulted in the dismissal of the First Case nor was there a request for relief from the judgment or an appeal. The bankruptcy court considered Vahey's "belated information" regarding his majority ownership "little more . . . than an effort to collaterally attac[k] the prior dismissal order." After making these findings, the bankruptcy court decided that all elements for claim and issue preclusion were met.

In addition, the court found that dismissal was proper on bad faith grounds. Considering the factors[13] set forth in Little

---

[13] These factors include: (1) the debtor has one asset, such as a tract of undeveloped or developed real property; (2) the secured creditors' liens encumber this tract; (3) there are generally no employees except for the principals; (4) the debtor has little or no cash flow and there are no available sources of income to sustain a plan of reorganization; (5) there are only a few, if any, unsecured creditors whose claims are

(continued...)

Creek Development Co. v. Commonwealth Mortgage Corp. (Matter of Little Creek Development Co.), 779 F.2d 1068, 72, 73 (5th Cir. 1986), as adopted by the Ninth Circuit in State of Idaho, Dept. of Lands v. Arnold (In re Arnold), 806 F.2d 937 (9th Cir. 1986), the court found all factors were met. Relying on the factors in total, the bankruptcy court found bad faith and that this constituted "cause" for dismissal under § 1112(b)(1).[14] In the end, the court analyzed whether conversion or dismissal was in the best interests of the creditors and the estate and concluded that dismissal better met those criteria since there were no unsecured creditors and dismissal would allow Inland to pursue its collection rights. In the exercise of its discretion, the bankruptcy court declined to issue sanctions under § 105(a) or its inherent powers.

On March 13, 2015, the bankruptcy court entered the order dismissing the Second Case. On the same date, the order was amended to correct the citation from § 1112(b)(1) to § 707(a)(1) — the applicable dismissal standard in chapter 7 cases. The substance of the court's legal and factual analysis remained

[13](...continued)
relatively small; (6) the property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court; (7) alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford; (8) bankruptcy offers the only possibility of forestalling loss of the property and (9) there are sometimes allegations of wrongdoing by the debtor or its principals.

[14] As indicated below, the bankruptcy court amended its order to cite § 707(a)(1), the applicable dismissal statute in chapter 7 cases.

-19-

unchanged. Vahey filed a timely notice of appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(O). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err in dismissing Irish Acres' Second Case?

## IV. STANDARDS OF REVIEW

We review rulings regarding the availability of res judicata doctrines, including claim and issue preclusion, de novo as mixed questions of law and fact in which legal questions predominate. Robi v. Five Platters, Inc., 838 F.2d 318, 321 (9th Cir. 1988); Alary Corp. v. Sims (In re Assoc'd Vintage Group, Inc.), 283 B.R. 549, 554 (9th Cir. BAP 2002).

Once we determine that the doctrines are available to be applied, the actual decision to apply them is left to the trial court's discretion. Robi, 838 F.2d at 321. Review for abuse of discretion has two parts. First, "we determine de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested." U.S. v. Hinkson, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc). If so, we then determine under the clearly erroneous standard whether the bankruptcy court's factual findings and its application of the facts to the relevant law were "(1) illogical; (2) implausible; or (3) without support in inferences that may be drawn from the facts in the record." Id. at 1262.

Because we may affirm on any ground supported by the

record, <u>Shanks v. Dressel</u>, 540 F.3d 1082, 1086 (9th Cir. 2008), we need not discuss every reason supporting the bankruptcy court's dismissal order.

## V. DISCUSSION

On appeal, Vahey asserts that the doctrines of claim and issue preclusion do not apply since the first dismissal order was based upon the lack of authority by the manager and the Second Case was filed based upon the authority of the Vahey Trust, the member holding a majority of the membership interest. To support his position, Vahey contends that the bankruptcy court erred by ruling that the evidence regarding Vahey's majority interest should have been presented in the First Case because such evidence was proffered and rejected by the court. He further points out that the issue regarding the percentage of membership interests was raised in Inland's reply brief. For these reasons, Vahey asserts that the bankruptcy court improperly used the record before it to determine the 50/50 membership interests of the Vahey Trust and Sweeney's in the First Case despite being apprised that the Vahey Trust held a majority position. We are not persuaded by these arguments as to issue preclusion.

"The doctrine of issue preclusion prevents relitigation of all 'issues of fact or law that were actually litigated and necessarily decided' in a prior proceeding. . . . The issue must have been 'actually decided' after a 'full and fair opportunity' for litigation." <u>Robi</u>, 838 F.2d at 322. Under federal law, issue preclusion applies only where it is established that (1) the issue necessarily decided at the

-21-

previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom issue preclusion is asserted was a party or in privity with a party at the first proceeding. Hydranautics v. Filtec Corp., 204 F.3d 880, 885 (9th Cir. 2000).

Here, the issue of Vahey's or the Vahey Trust's authority to file the bankruptcy case on behalf of Irish Acres was necessarily decided in the First Case. The issue regarding that authority is identical to the one which Vahey sought to relitigate in the Second Case. The suggestion that Vahey did not have a full and fair opportunity to litigate the issue because the bankruptcy court denied his request to supplement the evidence is without merit. The Vahey Trust's authority to file the bankruptcy case as a majority member was clearly relevant to the issues litigated and adjudicated in the First Case.

Further, Vahey had an opportunity to present the merits of that argument even after the ruling. As noted by the bankruptcy court, Vahey did not seek reconsideration nor did he seek to amend or obtain relief from the court's ruling regarding its finding on the 50/50 membership interest. Instead, he allowed the dismissal order in the First Case to become final. It makes no difference that the dismissal order was based on an erroneous factual finding or understanding of the law, or both. Issue preclusion is concerned with whether the issue was necessarily decided in the first proceeding and whether there is a final judgment.

As to the third element for issue preclusion, there is no question that Vahey was a party in the First Case. Accordingly, the bankruptcy court's prior determination that Vahey or the Vahey Trust did not have the authority to file the bankruptcy is conclusive.

In sum, the bankruptcy court did not err in ruling that the doctrine of issue preclusion applied to Vahey's asserted defense to the MTD in the Second Case; i.e., that the Vahey Trust had authority to file the bankruptcy petition on behalf of Irish Acres due to its majority membership interest. Therefore, dismissal of the Second Case was proper. There is nothing in the record that shows the bankruptcy court abused its discretion in applying issue preclusion under these circumstances. Because the doctrine of issue preclusion suffices to dispose of this appeal, we do not consider the bankruptcy court's other reasons for dismissing the Second Case. See Shanks v. Dressel, 540 F.3d at 1082.

## VI. CONCLUSION

For the reasons stated, we AFFIRM.